UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVITA, INC., *et al.*,

    Plaintiffs,                 :          Case No. 2:18-cv-1739

    v.                                     Judge Sarah D. Morrison
                                          Magistrate Judge Kimberly A. Jolson

**MARIETTA MEMORIAL
HOSPITAL EMPLOYEE
HEALTH BENEFIT PLAN,** *et al.*,      :

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss. (ECF Nos. 17, 18.) Plaintiff filed a Memorandum in Opposition in response to each Motion (ECF Nos. 23, 24), and Defendants each filed a Reply (ECF Nos. 35, 38). Plaintiffs have also filed a Consent Motion for Leave to File Sur-Reply (ECF No. 39) and a Request for Oral Argument (ECF No. 43). Defendant Medical Benefits Mutual Life Insurance Company ("MedBen") filed a Response to Plaintiffs' Request for Oral Argument. (ECF No. 45.) These matters are now ripe for consideration.

**I.    BACKGROUND**

Plaintiff DaVita, and its subsidiary, co-Plaintiff DVA Renal Healthcare, Inc., are dialysis care providers. (Compl., ECF No. 1, ¶¶ 11–12.) Plaintiffs provide their services to members of various health benefit plans, including Defendant Marietta Memorial Hospital Employee Health Benefit Plan (the "Plan"). (*Id.* at ¶ 1.) Defendants Marietta Memorial Hospital ("Marietta") and MedBen are the Plan Administrator and Third Party Administrator for the Plan. (*Id.* at ¶¶ 8, 14.) The Plan is a self-funded health benefit plan governed by the Employee Retirement Income

Security Act of 1974 ("ERISA"), and it provides for various reimbursement levels for services provided by various health care providers. (*Id.* at ¶¶ 13, 24.) The aspect of the Plan that is relevant here deals with its treatment of dialysis providers. It classifies all dialysis providers as "out-of-network" and thereby reimburses them at a lower rate. (*Id.* at ¶¶ 25–28.)

Most individuals who require dialysis do so because they have End Stage Renal Disease ("ESRD"), including Patient A, who receives dialysis from Plaintiffs. (*Id.* at ¶¶ 19–20.) Patient A was a member of the Plan until August 31, 2018, when Medicare became Patient A's primary insurance. (*Id.* at ¶ 29.)

On December 19, 2018, Plaintiffs filed the Complaint against Defendants, arguing that the Plan treats dialysis providers differently than other medical providers in violation of federal law. Plaintiffs have brought suit in their own names, as well as on behalf of Patient A. (*See, e.g.*, *id.* at ¶ 60.) Plaintiffs assert that they have standing to sue on behalf of Patient A based on an "Assignment of Benefits" form that Patient A signed (the "Assignment"), by which Patient A assigned particular rights to Plaintiffs. (*Id.* at ¶ 31.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotations omitted). A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

> Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

## III. ANALYSIS

Plaintiffs claim that Defendants are required to treat dialysis care providers more favorably than they currently do, including that they must reimburse these providers at a higher rate. Plaintiffs argue that Defendants' disfavored treatment of dialysis providers violates the nondiscrimination provisions of the Medicare Secondary Payer Act ("MSPA"), as well as various provisions of ERISA.

### A. Preliminary Matters

Various dialysis providers, including Plaintiffs, have been litigating similar cases across the country, resulting in four recent district court opinions that the parties have brought to the Court's attention. (ECF Nos. 41, 42, 44.) All four of these opinions were issued after Plaintiffs filed their responses to the motions to dismiss, and three were issued after briefing closed entirely. As a result, Plaintiffs have filed a Motion for Leave to File Sur-Reply (ECF No. 39) in order to address the one opinion that had been issued at the time they filed the motion. Plaintiffs represent that Defendants consent to the Motion.

Pursuant to Local Rule 7.2(a)(2), no additional memoranda may be filed subsequent to a reply brief, except "upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). The Court finds that Plaintiffs have established good cause. The Motion for Leave to File Sur-Reply is **GRANTED**.

In addition, Plaintiffs have filed a Request for Oral Argument (ECF No. 43), also because of this new authority. After examining the briefs and the record, the Court has determined that oral argument is unnecessary. The parties have adequately presented their arguments and facts in their extensive briefing, and oral argument would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); S.D. Ohio Loc. R. 7.1(a). Plaintiffs' Request for Oral Argument is **DENIED**.

### B. Count 1 – The MSPA Claim

Individuals with ESRD are eligible for Medicare, regardless of age or income, three months after beginning a regular course of dialysis. 42 U.S.C. §§ 426-1, 1395c (2012). However, such individuals are not required to transition to Medicare immediately upon becoming eligible. In fact, Congress, through the MSPA, sought to make Medicare the *secondary* payer for dialysis treatments for privately insured individuals with ESRD for the first thirty months of Medicare eligibility. *Bio-Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 281 (6th Cir. 2011); *see* 42 C.F.R. § 411.162(a) (2019). That is, Congress decided that Medicare would serve, at least initially, as the backstop to the "primary payers," the individuals' private health plans. *Bio-Med.*, 656 F.3d at 281.

#### 1. Private right of action

As a part of this statutory scheme, the MSPA created a private right of action whereby private actors can sue a primary plan for damages if that plan fails to provide for primary payment (or appropriate reimbursement) in accordance with this primary/secondary payer

structure. 42 U.S.C. § 1395y(b)(3)(A); *Bio-Med.*, 656 F.3d at 284–85. However, a primary plan is only liable when it "causes Medicare to step in and (temporarily) foot the bill." *Bio-Med.*, 656 F.3d at 286. That means that it must have been the case that Medicare made payments that the primary payer was responsible for making. *DaVita Inc. v. Virginia Mason Mem'l Hosp.*, No. 2:19-CV-302-BJR, 2019 WL 3205865, at *4 (W.D. Wash. July 16, 2019).

In this case, Medicare never had to step in to make payments that the Plan, Patient A's primary plan, failed to make. Medicare only began to make payments once Patient A voluntarily left the Plan and enrolled in Medicare. DaVita argues that it is sufficient that Patient A left the Plan prematurely and enrolled in Medicare. (Pls.' Reply to Def. MedBen Mot. Dismiss, ECF No. 24, at 13 n.7.) It is not. Pursuant to the MSPA, the Plan was only required to make payments (or to reimburse Medicare) so long as Patient A was enrolled in the Plan. The Plan was never required to make payments once Patient A *voluntarily* enrolled in Medicare, even if he/she could have remained on the Plan for a longer period of time. This does not fall within the limited scope of the private cause of action. *See Virginia Mason*, 2019 WL 3205865, at *5 ("[O]nce Patient 1 switched to Medicare, Medicare, not the Plan, became the primary payer.").

### 2. Nondiscrimination provisions

There are additional and independent grounds to dismiss the MSPA claim.

In order to prevent private plans from providing inferior benefits to individuals with ESRD, or from ending their coverage entirely, Congress included two nondiscrimination provisions in the MSPA, the "take into account" provision and the "nondifferentiation" provision. *See* 42 U.S.C. § 1395y(b)(1)(C); *Bio-Med.*, 656 F.3d at 281; 42 C.F.R. § 411.161 (2019). The "take into account" provision prohibits group health plans from "tak[ing] into account that an individual [with ESRD] is entitled to or eligible for [Medicare] benefits" for the

first thirty months of eligibility. 42 U.S.C. § 1395y(b)(1)(C)(i); *Bio-Med.*, 656 F.3d at 281–82. That is, a group health plan is prohibited from "consider[ing] the fact that an insured person" is eligible for Medicare in making coverage decisions. *Bio-Med.*, 656 F.3d at 282 (emphasis deleted).

The implementing regulations pertaining to this provision provide various "[e]xamples of actions that constitute 'taking into account,'" all of which involve treating those eligible for Medicare differently from those who are not. *See, e.g.*, 42 C.F.R. §§ 411.108(a)(5) ("Imposing limitations on benefits for a Medicare entitled individual that do not apply to others enrolled in the plan"), (8) ("Paying providers and suppliers less for services furnished to a Medicare beneficiary than for the same services furnished to an enrollee who is not entitled to Medicare"). It follows from the language of the "take into account" provision and from its implementing regulations that a health plan only violates this provision through disparate treatment based on Medicare eligibility—that is, when a group health plan treats those eligible for Medicare differently than those who are not. *See Dialysis of Des Moines, LLC v. Smithfield Foods Healthcare Plan*, No. 2:18-CV-653, slip op. at 11–12 (E.D. Va. Aug. 5, 2019) ("[A] limitation on services is permitted so long as it is uniform, meaning that it applies to all plan enrollees regardless of Medicare eligibility or ESRD diagnosis."); *DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960, 973 (N.D. Cal. 2019) (finding that because those receiving dialysis treatment who are Medicare-eligible and those who are not are subject to the same provisions, the benefit plan did not violate the "take into account" provision); *Nat'l Renal All., LLC v. Blue Cross & Blue Shield of Ga, Inc.*, 598 F. Supp. 2d 1344, 1354 (N.D. Ga. 2009) ("Plaintiffs have not demonstrated that Blue Cross's decision to lower reimbursement rates on dialysis treatment . . . constitutes 'taking into account' or 'differentiating' a level of coverage provided to those

6

suffering from ESRD and those not.")

The "nondifferentiation" provision tells group health plans that they "may not differentiate in the benefits [they] provide[] between individuals having end stage renal disease and other individuals covered by such plan on the basis of the existence of end stage renal disease, the need for renal dialysis, or in any other manner" during the first thirty months of Medicare eligibility. 42 U.S.C. § 1395y(b)(1)(C)(ii); *Bio-Med.*, 656 F.3d at 282. Examples of such prohibited "differentiation" include "[i]mposing on persons who have ESRD, but not on others enrolled in the plan, benefit limitations" and "[p]aying providers and suppliers less for services furnished to individuals who have ESRD than for the same services furnished to those who do not have ESRD . . . ." 42 C.F.R. §§ 411.161(b)(ii), (iv).

The regulations for the "nondifferentiation" provision specifically say that "[a] plan is not prohibited from limiting covered utilization of a particular service as long as the limitation applies uniformly to all plan enrollees." 42 C.F.R. § 411.161(c). As with the "take into account provision," the language of the "nondifferentiation" provision and its implementing regulations shows that a health plan only violates this provision when it treats those with ESRD differently than those who do not have ESRD (i.e., disparate treatment). *See Dialysis of Des Moines*, slip op. at 11–12; *Amy's Kitchen*, 379 F. Supp. 3d at 973 ("[T]he applicable rates in Amy's Plan are set based on the fact of dialysis treatment, not the existence of ESRD."); *Nat'l Renal All.*, 598 F. Supp. 2d at 1354. ("Significant to the court's finding is the fact that there is no allegation that Blue Cross pays a different amount for dialysis treatment of non-ESRD patients than ESRD patients.")

Therefore, Defendants have violated these provisions, and thereby the MSPA, only if the Plan treats those eligible for Medicare differently than those who are not, or it treats those who

7

have ESRD differently than those who do not. Plaintiffs argue that Defendants' categorization of dialysis providers as "out-of-network" and the corresponding reduction in the dialysis reimbursement rate violates both provisions. Based on the facts that they have alleged, however, Plaintiffs have failed to state a claim that Defendants have violated either provision.

Plaintiffs acknowledge that the aspects of the Plan about which they complain apply to all enrollees receiving dialysis. (ECF No. 1, ¶ 25.) That is why Plaintiffs' claims fail. It cannot be the case that the Plan has "taken into account" or "considered" an individual's Medicare status if all patients receiving dialysis (including those ineligible for Medicare) are governed by the same standards. Nor can it be the case that Defendants have "differentiate[d]" between individuals with ESRD and individuals without ESRD when all Plan enrollees receiving dialysis (including those without ESRD) are subject to the same provisions.

Plaintiffs rely on a disparate impact argument. They argue that because individuals with ESRD comprise a disproportionately large number of those receiving dialysis, changes in the Plan's treatment of dialysis providers has a discriminatory result, even if they are not facially discriminatory. (Pls.' Response to Def. Marietta Mot. to Dismiss, ECF No. 23, at 9–11.) To support their argument, Plaintiffs point to other statutes that the Supreme Court has found to encompass disparate impact claims. (*Id.*)

The difference between these statutes and the MSPA is in their language, and it is that difference why those statutes allow for disparate impact claims but the MSPA does not. For example, the Supreme Court found that the phrase "otherwise make unavailable" in the Fair Housing Act "refers to the consequences of an action rather than the actor's intent," which is demonstrative of congressional intent to provide for disparate-impact claims. *Tex. Dep't of Hous.*

*& Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2518 (2015). But the MSPA does not contain this type of "results-oriented" language.

The only language that Plaintiffs point to in order to support their disparate impact argument is the language in the "nondifferentiation" provision prohibiting differentiation in benefits on account of ESRD, the need for dialysis, or "in any other manner." (ECF No. 23, at 10.). But Plaintiffs ultimately concede that this language cannot be read as broadly as they claim. (Pls.' Response to Def. MedBen Mot. to Dismiss, ECF No. 24, at 13.) This is because the MSPA regulations specifically say that "[a] plan is not prohibited from limiting covered utilization of a particular service as long as the limitation applies uniformly to all plan enrollees." 42 C.F.R. § 411.161(c). Thus, health plan limitations are permissible under the MSPA as long as they apply to all enrollees equally, as here.

The last argument that Plaintiffs make in support of their disparate impact argument comes from one of the responses by the Department of Health and Human Services ("HHS") to a comment during the notice-and-comment period before the MSPA rules were finalized. In support of this argument, Plaintiffs selectively, and in misleading fashion, quote a portion of HHS's response, arguing: "The 'taking into account' provisions expressly bar even facially neutral '[p]lan provisions that have the effect of denying, restricting, or terminating benefits for [ESRD-based Medicare eligible] individuals.'" (ECF No. 24, at 13 (alterations in original) (quoting Medicare Program; Medicare Secondary Payer for Individuals Entitled to Medicare and Also Covered Under Group Health Plans, 60 Fed. Reg. 45344-01, at 45351 (Aug. 31, 1995)).) The full comment response says: "Plan provisions that have the effect of denying, restricting, or terminating benefits for disabled beneficiaries who have LGHP[1] coverage by virtue of current

---

[1] Large Group Health Plan.

9

employment status, but not for similarly situated individuals, are prohibited." 60 Fed. Reg., at 45351. The full quote not only does not support Plaintiffs' argument, but it is further evidence that a disparate impact claim is not cognizable under the MSPA.

In short, there is nothing illegal about the disputed terms in the Plan. Because Plaintiffs' claim is not cognizable under the MSPA as a matter of law, Count One is **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted.

    **C.**    **Counts Two through Seven – The ERISA Claims**

In addition to their MSPA claim, Plaintiffs have brought six ERISA claims—one claim pursuant to 29 U.S.C. § 1132(a)(1)(B), based on allegedly illegal Plan provisions (Count Two); four claims alleging breaches of fiduciary obligations by Defendants (Counts Three through Six); and one claim pursuant to 29 U.S.C. § 1182(a)(1), the nondiscrimination provisions of ERISA (Count Seven).

        **1.**  **Counts Two and Seven**

Count Two is premised entirely on purported violations of the MSPA. (*See* ECF No. 1, ¶¶ 67–68 ("Because these payment provisions targeting dialysis-related treatment are illegal, they should be severed from the Plan" and "Defendants' conduct constitutes a breach of the ERISA plans at issue . . . .")) Plaintiffs do not allege that Defendants have not complied with the terms of the Plan; rather, they allege that the Defendants have violated ERISA by complying with *illegal provisions* of the Plan. Because the Court has already determined that the claim that the Plan's provisions are illegal fails as a matter of law, Count Two is **DISMISSED** with prejudice as well.

Count Seven fails for similar reasons. Plaintiffs argue that the Plan discriminates "against plan participants and beneficiaries on the basis of health condition and medical status, including

disability," in violation of 29 U.S.C. § 1182(a)(1). (ECF No. 1 ¶ 92.) Specifically, Plaintiffs allege that the Plan discriminates against enrollees suffering from ESRD. (*Id.*) As has already been explained, this is not the case; those with ESRD are treated the same as those without.

Plaintiffs argue that the Plan's disparate treatment of dialysis services constitutes an additional example of discrimination on the basis of disability. (ECF No. 23, at 15.) This argument ignores one of the statute's corresponding regulations, which specifically says that "a group health plan or group health insurance issuer is not required to provide coverage for any particular benefit to any group of similarly situated individuals." 29 C.F.R. § 2590.702(b)(2)(i)(A) (2019). The Plan treats all similarly situated individuals equally: all those requiring dialysis are treated exactly the same. Count Seven is also **DISMISSED** with prejudice.

### 2. Counts Three through Six

Counts Three through Six are all fundamentally the same claim. They all allege breach of alleged fiduciary duties by Defendants. (*See* ECF No. 1, at 24–29.) Plaintiffs bring each of these claims as assignees of Patient A, meaning that they rely on a valid assignment.[2] As a result, if Patient A has not assigned to Plaintiffs his/her rights to bring equitable claims under ERISA, Plaintiffs have no standing to bring these claims.[3]

Plaintiffs rely on an Assignment that is part of a form called "Patient Acknowledgment,

---

[2] Plaintiffs have brought Counts Two and Seven as assignees as well. (ECF No. 1 ¶¶ 70, 94.) However, the validity of the assignment as to these claims is irrelevant because of the fundamental flaws in each claim described in the previous section.

[3] "Non-participant health care providers cannot bring their own ERISA claims—they do so derivatively, relying on the participants' contractually defined rights and therefore the participants' standing at the time of the assignment." *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287–88 (6th Cir. 2018). Plaintiffs explicitly bring Counts Three and Four only as an assignee. (ECF No. 1, ¶¶ 73, 77.) Counts Five and Six contain no such explicit provision. However, Plaintiffs have incorporated all of their prior allegations into Counts Five and Six (including those related to Patient A's assignment of rights). (*See* ECF No. 1 ¶¶ 78, 84). Given this incorporation, and given that Plaintiffs have no standing to bring these claims on behalf of themselves, the Court construes Counts Five and Six as being brought by Plaintiffs in their role as Patient A's assignee, as with Counts Three and Four.

Authorization and Financial Responsibility Form." (Pls.' Sur-Reply, Ex. A, ECF No. 39-1, at 1.) This form has the stated purpose of "confirm[ing the patient's] choice to receive dialysis services at the listed facility and that [the patient] will be personally responsible for payments and other services [the patient] receive[s] through DaVita. Further, [the patient is] assigning rights to payments from [the patient's] insurer and authorizing DaVita to obtain the necessary information to obtain such payments." (*Id.*) In a section called "Assignment of Benefits; Lien," the form states as follows:

> I hereby assign to DaVita all of my right, title and interest in any cause of action and/or any payment due to me (or my estate) under any employee benefit plan, insurance plan, union trust fund, or similar plan ("Plan"), under which I am a participant or beneficiary, for services, drugs or supplies provided by DaVita to me for purposes of creating an assignment of benefits under ERISA or any other applicable law. I also hereby designate DaVita as a beneficiary under any such Plan and instruct that any payment be made solely to and sent directly to DaVita. If I receive any payment directly from any Plan for services, drugs or supplies provided to me by DaVita, including insurance checks, I recognize that such payment sent directly to me was inappropriate and I agree to immediately endorse and forward such payment to DaVita. I agree that DaVita shall have an automatic lien and/or security interest against any such payment I receive from any Plan."

(*Id.* at 2, ¶ 5.)

The quoted language is broad, and Plaintiffs argue that it is not limited to the payment of benefits. (ECF No. 23, at 14.) In particular, Plaintiffs highlight the reference to "any cause of action," arguing that Patient A has assigned to Plaintiffs his/her right to sue for breach of fiduciary duty under ERISA. (*Id.*)

The reference to "cause of action" is arguably ambiguous, and such ambiguity is construed against the drafter. *See Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 266–67 (6th Cir. 2018) (holding that *contra proferentum* doctrine "has legitimate force" in an ERISA case, except where a benefits administrator is entitled to deference). This doctrine "compels a drafting party to be honest about its offer up front, by threatening to construe terms

12

'against the offeror' if he attempts to hoodwink the other party." *Id.* at 267. Plaintiffs, as the drafter of this Assignment, do not get the benefit of the doubt. Plaintiffs could have explicitly written an assignment that assigned rights to equitable causes of action, but they did not do so.

The broader context of the form on which the Assignment is located, as well as its precise location on the form, adds clarity to what the Assignment means. It is located in a subsection called "Assignment of Benefits" on a form that is almost entirely about insurance payments and which form's stated purpose involves "assigning rights to payments," not lawsuits.

The meaning of "cause of action" must be informed by its context. *Cf. Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.") Context reveals that "cause of action" is related to benefits under ERISA (e.g., suing for deprivation of benefits) not fiduciary duty responsibilities under ERISA. The form in no way indicates that in signing it a patient would be assigning his or her rights to bring a claim for a breach of fiduciary duty. *See* Restatement (Second) of Contracts § 324 (1981) ("It is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee."); *cf. Herr v. U.S. Forest Serv.*, 803 F.3d 809, 821 (6th Cir. 2015) (finding that deed did not manifest intention to transfer particular property right).

At least one other court has reviewed an "Assignment of Benefits" provision that is identical in all material respects to the Assignment. (*Compare* ECF No. 39-1, at 1, *with* (Def. Mot. Dismiss Ex. B at 2 ¶ 5, *Amy's Kitchen*, 379 F. Supp. 3d 960 (No. 4:18-CV-6975, ECF No. 25-3)) ("I hereby assign to DaVita all of my right, title and interest in any cause of action and/or any payment due to me . . . under ERISA or any other applicable law.").) That court, too,

concluded that "cause of action" does not include claims for equitable relief. *Compare Amy's Kitchen*, 379 F. Supp. 3d at 970 ("In light of the broader context of the patient form, which focuses on the responsibility of the patient to pay for treatment, the reference to 'any cause of action' found solely in a provision titled 'Assignment of Benefits,' and the relatively generic language employed by the assignment compared to what courts in the Ninth Circuit have found sufficient to confirm an explicit assignment of a right to bring ERISA claims beyond benefits, the Court finds the scope of the assignment here to be limited to the right to claims for payment of benefits."); *see also Star Dialysis, LLC v. WinCo Foods Employee Benefit Plan*, No. 1:18-CV-482-CWD, 2019 WL 3069849, at *14–*16 (D. Idaho July 12, 2019) ("Both the context of and language used in the assignment suggests, at most, that Patients 1–6 transferred to DaVita the right to bring suit for payment of benefits . . . and not for any cause of action under ERISA whatsoever."). Although the analysis by the *Amy's Kitchen* court relied on Ninth Circuit precedent by which it was bound, the Court finds its analysis to be persuasive. The Court also finds the one relevant Ninth Circuit case on which the *Amy's Kitchen* court relied—*Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*—to be persuasive.

In *Spinedex*, health plan beneficiaries had signed forms that said, in all capital letters, "This is a direct assignment of my rights and benefits under this policy." 770 F.3d 1282, 1292 (9th Cir. 2014). The health care provider argued that "rights" included the right to sue for breach of fiduciary duty. *Id.* The court found that "[t]he entire focus of the Assignment is payment for medical services provided" and that "[t]he Assignment nowhere indicates that . . . patients were assigning to Spinedex rights to bring claims for breach of fiduciary duty." *Id.* As a result, the court concluded that the context of the assignment indicated that the assignment of rights was limited to claims for payment of benefits. *Id.*

14

Plaintiffs argue that this difference in language—"cause of action" in their Assignment versus "rights" in the *Spinedex* assignment—is material. (ECF No. 24, at 7.) However, they provide no explanation as to why this is the case, and the Court sees no reason why "cause of action" should be read any more broadly than "rights" in this context.

Accordingly, the Court finds that the Assignment, read in context, is limited to rights and causes of action pertaining to benefits. Plaintiffs have no valid assignment of rights to bring equitable claims and therefore have no standing to assert these claims on behalf of Patient A.

Counts Three through Seven are **DISMISSED** with prejudice, for lack of standing.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Consent Motion for Leave to File Sur-Reply is **GRANTED**. Plaintiff's Request for Oral Argument is **DENIED**.

Defendant Marietta and Defendant Plan's Motion to Dismiss is **GRANTED**. Defendant MedBen's Motion to Dismiss is **GRANTED**. The Complaint is **DISMISSED** with prejudice.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**