UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVITA INC.**, *et al.*,

      **Plaintiffs,**

  v.                            Case No. 2:18-cv-1739
                                  Judge Sarah D. Morrison
                                  Magistrate Judge Kimberly A.
**MARIETTA MEMORIAL**       Jolson
**HOSPITAL EMPLOYEE**
**HEALTH BENEFIT PLAN**, *et al.*,

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings. (Mot., ECF No. 92.) The Motion is **GRANTED in part** and **DENIED in part**.

### I. FACTUAL BACKGROUND

All well-pled factual allegations in the Amended Complaint (Am. Compl., ECF No. 62) are accepted as true for purposes of the Motion for Judgment on the Pleadings. *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). The following summary draws from the allegations in the Amended Complaint and certain documents integral to and incorporated therein.

    **A.**     **Parties**

DaVita Inc. and its subsidiary DVA Renal Healthcare, Inc. (together, "DaVita") are dialysis care providers. (Am. Compl., ¶¶ 11–12.)

Marietta Memorial Hospital established and maintains the Marietta Memorial Hospital Employee Health Benefit Plan. (Am. Compl., ¶ 14; Plan, ECF No. 62-1, PAGEID # 766–67.) The Plan provides health and welfare benefits to the Hospital's eligible employees and their eligible dependents in accordance with the Employee Retirement Income Security Act ("ERISA"). (Am. Compl., ¶ 13; Plan, PAGEID # 766.) Medical Benefits Administrators, Inc. ("MedBen") serves as the Plan's medical benefits manager. (Am. Compl., ¶ 15; Plan, PAGEID # 761.)

### B. Plan Coverage for Patient A's Dialysis

"Virtually all" dialysis patients suffer from end-stage renal disease ("ESRD"), and "virtually all" ESRD patients require dialysis. (Am. Compl., ¶ 20.) In other words, there is a near-total overlap between those with ESRD and those receiving dialysis. For the last several years of his or her life, Patient A was among them.

In April 2017, DaVita began providing dialysis care to Patient A. (*Id.*, ¶ 29.) At the time, Patient A was a participant in the Plan.[1] (*Id.*) After submitting claims for reimbursement to MedBen, DaVita discovered that the Plan reimburses dialysis services at a "depressed rate." (*Id.*, ¶¶ 30, 32.) DaVita describes the Plan's dialysis benefit as follows:

> Unlike its coverage for other services, the [Plan] offers no network of contracted dialysis providers. . . .
>
> The Plan generally provides for reimbursement based on a "reasonable and customary" fee if a provider is "out-of-network." A "reasonable and customary" amount is understood in the healthcare industry to be a

---

[1] As a result of his/her ESRD diagnosis, Patient A became eligible for Medicare on July 1, 2017. (Am. Compl., ¶ 29.) He/she was a Plan participant until August 31, 2018, and received dialysis services from DaVita until November 8, 2019. (*Id.*)

2

> measure of reimbursement based on providers' billed charges in a particular geographic area. . . .
>
> . . . Unlike reimbursement for other out-of-network services which are reimbursed based on an actual "reasonable and customary" fee, the [Plan] provides an "alternative basis for payment" applicable only to "dialysis-related services and products." The . . . Plan will reimburse out-of-network dialysis providers a "reasonable and customary" amount that "will not exceed the maximum payable amount applicable . . . which is typically one hundred twenty-five percent (125%) of the current Medicare allowable fee." [Plan, PAGEID # 776 (alteration in Am. Compl.).] . . .
>
> . . . For the dialysis service itself, the Plan reimburses at a much lower rate. The Plan specifies a 70% plan benefit for the actual dialysis treatment. However, the 70% that the Plan pays for dialysis treatment is a percentage of a depressed number: the Plan pays 70% of 125% of the Medicare rate, equaling 87.5% of the Medicare rate, and the Medicare rate is already far below the industry-wide definition of a "reasonable and customary" fee. . . .

(Am. Compl., ¶¶ 25–28) (emphasis and footnotes omitted).

DaVita now brings suit against the Hospital, the Plan, and MedBen, alleging that the dialysis reimbursement scheme is unlawful. (Am. Compl.) To that end, DaVita asserts these claims:

<u>Count I</u>: Violation of the Medicare Secondary Payer Act (Hospital, Plan)

<u>Count II</u>: Claim for benefits under ERISA § 502(a)(1)(B) (All Defendants)

<u>Count III</u>: Violation of 29 U.S.C. § 1182(a)(1) (Hospital, Plan)

Defendants move for judgment as a matter of law. (Mot.)

## II.   PROCEDURAL BACKGROUND

This case suffers a unique procedural posture. A summary of the procedural backdrop provides necessary context to the analysis.

### A. This Court dismissed DaVita's original Complaint.

DaVita first filed this action in December 2018, asserting these claims:

Count I: Violation of the Medicare Secondary Payer Act (Hospital, Plan)

Count II: Claim for benefits under ERISA § 502(a)(1)(B) (All Defendants)

Count III: Breach of ERISA fiduciary duty (Hospital)

Count IV: Breach of ERISA fiduciary duty (MedBen)

Count V: ERISA co-fiduciary liability (MedBen)

Count VI: Knowing participation in ERISA fiduciary breach (MedBen)

Count VII: Violation of 29 U.S.C. § 1182(a)(1) (Hospital, Plan)

(ECF No. 1.) Defendants moved to dismiss under Rule 12(b). (ECF Nos. 17, 18.) On September 20, 2019, this Court issued an Opinion and Order granting Defendants' motions and dismissing DaVita's complaint in full and with prejudice. (ECF No. 46.)

### B. The Sixth Circuit reversed on Counts I, II, and VII.

DaVita timely appealed. (ECF No. 49.) A year later, on October 14, 2020, the Court of Appeals for the Sixth Circuit issued a decision reversing in part and remanding the case "for discovery and further proceedings" on Counts I, II, and VII. *DaVita, Inc. v. Marietta Mem'l Hosp. Emp. Health Benefit Plan*, 978 F.3d 326 (6th Cir. 2020), *rev'd in part*, 142 S.Ct. 1968 (2022). The mandate issued on January 22, 2021, and the case was officially sent back to this Court. (ECF No. 55.)

The parties participated in a Rule 16 preliminary pretrial conference with the Magistrate Judge. (*See* ECF No. 59.) Within days of the conference, DaVita filed an unopposed motion for leave to amend to "incorporate[] legal and factual developments that ha[d] occurred since" the case began. (ECF No. 60.) The motion

4

was granted (ECF No. 61) and DaVita's Amended Complaint became the operative pleading (*see* ECF No. 62).² Discovery progressed in accordance with the case management schedule established by the Court. (*See, e.g.*, ECF Nos. 65, 70.)

### C. The Supreme Court then reversed the Sixth Circuit.

On May 21, 2021, Defendants filed a petition for writ of certiorari with the United States Supreme Court. (ECF No. 72.) This Court later stayed the action pending resolution of the appeal to the Supreme Court. (ECF No. 80.)

The writ of certiorari issued, the Supreme Court heard the case, and a decision came down in Defendants' favor. *Marietta Mem'l Hosp. Emp. Health Benefit Plan v. DaVita Inc.*, 142 S.Ct. 1968 (2022). The matter was remanded to the Sixth Circuit, which, in turn, remanded it here. (ECF No. 85.)

Based on the Supreme Court's decision, Defendants now move for judgment on DaVita's Amended Complaint. (Mot., *generally*.)

## III. STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed just as a motion to dismiss under Rule 12(b)(6). *Tucker*, 539 F.3d at 549. To overcome such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

² Counts I, II, and VII of the original Complaint correspond directly to Counts I, II, and III of the Amended Complaint.

5

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A motion for judgment on the pleadings should be granted when there is no material issue of fact and the moving party is entitled to judgment as a matter of law. *Tucker*, 539 F.3d at 549.

## IV. ANALYSIS

Defendants argue that they are entitled to judgment as a matter of law on Counts I, II, and III of the Amended Complaint. (Mot.) For ease of analysis, the Court will address the Counts out of order.

### A. Defendants are entitled to judgment on Count I.

The Supreme Court directly considered whether the Plan violates the Medicare Secondary Payer Act ("MSPA"), as alleged in Count I. The High Court concluded that it does not:

> Because the Marietta Plan's terms as relevant here apply uniformly to all covered individuals, the Plan does not "differentiate in the benefits it provides" to individuals with end-stage renal disease or "take into account" whether an individual is entitled to or eligible for Medicare.

*Marietta Mem'l Hosp.*, 142 S.Ct. at 1975. Defendants are thus entitled to judgment on Count I.

Defendants' motion is **GRANTED** as to Count I.

6

### B. Count III survives the motion.

Count III of the Amended Complaint alleges that "the Plan discriminate[s] against its enrollees suffering from ESRD by eliminating network coverage for enrollees with ESRD and, by extension, by exposing enrollees to higher costs." (Am. Compl., ¶ 73.) In DaVita's view, this violates the federal law providing that "a group health plan . . . may not establish rules for eligibility (including continued eligibility) of any individual to enroll under the terms of the plan based on" health status. 29 U.S.C. § 1182(a)(1).

DaVita argues that Count III must survive, because the Sixth Circuit found that it stated an independent claim under § 1182 which was never before the Supreme Court. (Resp., ECF No. 93, PAGEID # 1074–75.) Meanwhile, Defendants argue that the Supreme Court's determination that the Plan does not discriminate "necessarily forecloses" the "derivative" Count III. (Mot., PAGEID # 1064.) The Court agrees with DaVita: The Sixth Circuit found that DaVita stated a claim under § 1182, which the Supreme Court neither discussed nor disturbed.

Defendants urge this Court to apply the Supreme Court's finding of non-discrimination under the MSPA to the § 1182 claim—but the Supreme Court underscored that the MSPA is a coordination-of-benefits statute, <u>not</u> an antidiscrimination statute. *Marietta Mem'l Hosp.*, 142 S.Ct. at 1974 n.2; *see also DaVita*, 978 F.3d at 362–64 (Murphy, J., dissenting). Section 1182, on the other hand, is an antidiscrimination statute in the traditional vein. The Sixth Circuit panel debated the correct framework for analyzing DaVita's § 1182 claim, but ultimately found that DaVita stated a valid claim. *Compare DaVita*, 978 F.3d at 346

7

(concluding that, under § 1182, "rules governing a plan's benefits are 'rules for eligibility'") *with id.* at 369 (concluding that the statute's "restrictions concern the eligibility for joining (or staying in) the plan, and do not regulate the benefits that the plan provides") (Murphy, J., dissenting). Even the dissenting voice acknowledged that traditional "antidiscrimination laws . . . bar a neutral practice . . . adopted with an invidious *intent* to harm a protected group." *Id.*, 978 F.3d at 364 (citation omitted) (Murphy, J., dissenting). The panel majority noted that "[d]iscovery may yield evidence of Defendants' motive for instituting unique reimbursement terms for dialysis services." *Id.* at 346 n.14. This work is yet to be done.

Defendants' motion is **DENIED** as to Count III.

C.     **Count II survives the motion.**

In Count II of the Amended Complaint, DaVita asserts a claim for benefits under ERISA § 502. Count II is based on the purported violations comprising Count I (*see* Am. Compl., ¶ 67 ("These provisions are illegal because they violate the 'take into account' and 'anti-differentiation' prohibitions of the MSPA.")) and Count III (*see id.*, ¶ 68 ("Defendants' conduct constitutes a breach of the ERISA plans at issue[.]")). Given the above analysis, Defendants are entitled to judgment on Count II to the extent it is based on Count I.

Defendants' motion is **GRANTED in part** and **DENIED in part** as to Count II.

8

## V.  CONCLUSION

Defendants' Motion for Judgment on the Pleadings is **GRANTED in part** and **DENIED in part**. Defendants are entitled to judgment on Count I of the Amended Complaint.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**