IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVITA INC., et al.,**

    **Plaintiffs,**

  v.                                                                  Civil Action 2:18-cv-1739
                                                                 Judge Sarah D. Morrison
                                                                 Magistrate Judge Jolson

**MARIETTA MEMORIAL HOSPITAL
EMPLOYEE BENEFIT PLAN, et al.,**

    **Defendants,**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion to Compel (Doc. 114) and the parties' subsequent Joint Status Report (Doc. 119). For the following reasons, Plaintiffs' Motion is **GRANTED in part.** The parties are also **ORDERED** to meet and confer on certain issues and to file a joint status report within ten (10) days of this Order.

**I.    BACKGROUND**

This action concerns claims brought under 29 U.S.C. § 1182 and the Employee Retirement Income Security Act of 1974 (ERISA) § 502. Plaintiffs are dialysis care providers who provided care to Patient A while Patient A was suffering from end-stage renal disease. (Doc. 62 at ¶¶ 11–12). In April 2017, when Plaintiff DaVita began providing dialysis care to Patient A, Patient A was a participant in the Marietta Memorial Hospital Employee Health Benefit Plan ("The Plan").[1] (*Id.* at ¶¶ 20, 29). Defendant Marietta Memorial Hospital ("Marietta") established and maintains

---

[1] The Plan is also a Defendant in this action. (*See* Doc. 62 at 1 (listing Defendants Marietta Memorial Hospital Employee Health Benefit Plan ("The Plan"), Marietta Memorial Hospital ("Marietta"), and Medical Benefits Mutual Life Insurance Co. ("MedBen")).

the Plan, and Defendant Medical Benefits Administrators, Inc. ("MedBen") serves as the Plan's medical benefits manager. (*Id.* at ¶¶ 13–15).

Plaintiff DaVita alleges that the Plan "reimburses dialysis services at a depressed rate." (Doc. 95 at 2 (internal quotation omitted)). More specifically, Plaintiffs say that the Plan offers no network of contracted dialysis providers and instead provides reimbursement "based on a reasonable and customary fee if a provider is out-of-network." (Doc. 62 at ¶ 25–26). But unlike other out-of-network services, the Plan provides "an alternative basis of payment applicable only to dialysis-related services and products." (*Id.* at 26–27 (internal quotations omitted)). According to Plaintiffs, "[t]he Plan will reimburse out-of-network dialysis providers a reasonable and customary amount that will not exceed the maximum payable amount applicable[,] which is typically one hundred twenty-five percent (125%) of the current Medicare allowable fee." (Doc. 95 at 3 (internal citations and quotations omitted)). For dialysis services, the Plan "pays 70% of the 125% of the Medicare rate," which is "already far below the industry-wide definition of a 'reasonable and customary' fee." (*Id.*, quoting Doc. 62 at ¶¶ 25–28). Accordingly, Plaintiffs allege "that the Plan discriminate[s] against its enrollees suffering from [early onset renal disease] by eliminating network coverage for enrollees with [early onset renal disease] and, by extension, by exposing enrollees to higher costs." (Doc. 62 at ¶ 73).

The present Motion and Joint Status Report arise out of several discovery disputes. After Plaintiffs filed their initial Motion to Compel, the Court stayed briefing on the matter and ordered the parties to meet and confer. (Doc. 116 at 1–2). The parties represent that they held conference calls on February 20, 2024, and February 23, 2024. (Doc. 119 at 1). While the parties failed to resolve their disputes, they say they narrowed their disagreements. (*See generally id.*). The Court addresses the remaining disputes in turn.

2

**II.     STANDARD**

Two federal rules govern the Motion to Compel. Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37, for its part, allows for a motion to compel discovery when a party fails to provide proper responses to requests for production of documents. *See* Fed. R. Civ. P. 37(a)(1), (3). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). If the movant meets that burden, "the party resisting production has the burden of establishing that the information either is not relevant" or that the information's relevance "is outweighed by the potential for undue burden[.]" *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 462 (S.D. Ohio Oct. 21, 2015). But at base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-cv-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

**III.    DISCUSSION**

   **A. Pre-2016 Dialysis Claim Documents Requested from MedBen**

Plaintiffs request from Defendant MedBen "records and information in its custody relating to dialysis claims since 2012" and now seek an order from the Court compelling MedBen to produce this information. (Doc. 119 at 2 (internal emphasis omitted); *see also* Doc. 119-1 at 1–3, 9–10). These records can be divided into two categories: (1) documents that pertain to Defendants Marietta and the Plan only, and (2) documents that pertain to other clients. (Doc. 119 at 2).

### 1. Records for Marietta and the Plan

For documents concerning Defendants Marietta and the Plan, MedBen has offered to produce records for 2014 through 2016, but not for claims dating back to January 1, 2012. (Doc. 119 at 2). Plaintiffs want the additional records, saying they could show:

> (1) the length of time dialysis patients remained on the Plan before and after Defendants implemented the challenged Plan terms effective January 1, 2016; (2) how the behavior of dialysis patients changed after Defendants implemented the challenged Plan terms; and (3) whether Defendants changed the Plan terms for an improper reason.

(Doc. 119-1 at 2).

Plaintiffs also say that Defendant MedBen has produced other documents from 2012, and "dialysis claim records should be no different." (*Id.*). For its part, Defendant MedBen argues that these documents are not relevant, because the Plan was implemented in August 2016, and Patient A received dialysis benefits as a participant in the Plan only from 2017 to 2018. (*Id.* at 4). Defendant MedBen also argues that its compromise of providing documents dating back to 2014 is sufficient for the purposes of this litigation. (*Id.* at 6–7).

But the Court agrees with Plaintiffs that these documents could have bearing on Plaintiff's claims. As the Sixth Circuit noted when discussing Plaintiffs' § 1182 claim, "[d]iscovery may yield evidence of Defendants' motive for instituting unique reimbursement terms for dialysis services." *DaVita, Inc. v. Marietta Memorial Hosp. Employee Health Benefit Plan*, 978 F.3d 326, 346 n.14 (6th Cir. 2020) (discussing Plaintiffs' allegations that Defendants "limiting dialysis reimbursements across the board" is "driven by. . . the incentive" to unload patients with end-stage renal disease). Plaintiffs say that Defendant MedBen "was actively marketing (and had convinced other clients to implement) identical plan terms before January 2014." (Doc. 119-1 at 2). As such,

4

Defendant MedBen's offer to produce documents dated August 2014 and later may not be sufficient for showing the motivations behind the Plan's terms. (Doc. 119 at 2).

Having established that the information sought is relevant, the Court now turns to Defendant MedBen's arguments concerning undue burden. Notably, Defendant MedBen bears the burden of showing that the materials Plaintiffs seek are "so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden[.]" *Wagner v. Circle W Mastiffs*, Nos. 2:08-cv-431, 2:09-cv-0172, 2013 WL 4479070, at *3 (S.D. Ohio Aug. 19, 2013); *see also Brothers Trading Co., Inc. v. Goodman Factors*, 1:14-cv-975, 2016 WL 9781140, at *2 (S.D. Ohio Mar. 2, 2016) (stating that the party resisting discovery bears must show that the discovery request would "impose an undue burden or expense"). But MedBen has not done the work to show that this request is too burdensome, especially considering that it has produced records from 2016 to present and has offered to produce records dating back to August 2014. (Doc. 119 at 2).

Defendant MedBen says that the records it already produced cost "$4,000 for scanning and initial redactions by a vendor, plus substantial additional redaction quality control review by legal, with total redaction time well over 100 hours." (Doc. 119-1 at 6). Further, Defendant MedBen asserts that production is "onerous" because of the Health Insurance Portability and Accountability Act (HIPAA). (*Id.* at 7). Because of HIPAA requirements, MedBen represents that records must be separated in a particular way. (*Id.*). To comply with Plaintiffs' discovery requests, it must search multiple databases before printing, scanning, and redacting individual documents. (*Id.*; *see also id.* (saying its system "is intended for internal segmentation for HIPAA. . . it is not built for discovery functionality").

5

But Defendant MedBen does not provide evidence to support its assertions, such as the overall expense of examining documents, whether business operations would be disrupted, or affidavits from those with knowledge of the records and the production process. *See Crabbs v. Scott*, No. 2:12-cv-1126, 2013 WL 4052840, at *4 (S.D. Ohio Aug. 9, 2013) (granting a motion to compel 3,000 pages of information even though "computer and record keeping systems are designed to facilitate jail business, not discovery" and the files were kept in paper format); *Burris v. Dodds*, No. 2:19-cv-815, 2019 WL 6251340, at *4–5 (S.D. Ohio Nov. 22, 2019) (compelling production of medical records where defendants asserted, without evidence, that they would have to manually search the names of prisoners and review each medical file to find "those who also experienced symptoms of alcohol withdrawal" within a one-year period"); *cf. Shah v. Metropolitan Life Insurance Co.*, No. 2:16-cv-1124, 2018 WL 2309595, at *6 (S.D. Ohio May 22, 2018) (denying a motion to compel in part because the requests were burdensome and "detract[ed]" from regular business, as proven through multiple, detailed affidavits). And "[t]he mere fact that a party may not have a centralized electronic document system does not insulate that party from all discovery efforts and does not itself establish that the current discovery requests are unduly burdensome." *Roxane Laboratories, Inc. v. Abbott Laboratories*, No. 2:12-cv-312, 2013 WL 1829569, at *5 (S.D. Ohio Apr. 30, 2013). Without more, the Court cannot say that Plaintiffs' request is too burdensome. This is especially true given that Defendant MedBen is producing similar documents for other time periods.

As such, Plaintiffs' Motion is **GRANTED.** Defendant MedBen is **ORDERED** to produce, **within thirty (30) days of this Order**, records, documents, and other information in its custody related to the Plan and its dialysis claims dating back to January 1, 2012.

### 2. Records for Other Clients

For similar reasons, Plaintiffs ask for documents related to Defendant MedBen's other clients, such as dialysis claim records and information for clients who "likewise implemented alternative dialysis plan provisions [since 2012]." (Doc. 119-1 at 10). Plaintiffs represent that these materials could show "whether MedBen engaged in any 'pattern or practice' of discriminating against [end stage renal disease] patients." (*Id*. at 9, citing *id.* at 1). Defendant MedBen has not produced any of these documents so far, arguing that Plaintiffs' request "implicate[s] records that do not belong to MedBen," is disproportional to the needs of the case, and is too burdensome to produce. (*Id.* at 10). Furthermore, Defendant MedBen says that these materials are not relevant because Plaintiffs' "involvement in the case is anchored in an assignment from Patient A, who is only alleged to have received dialysis benefits under the Marietta Plan beginning in April 15, 2017 into 2018." (*Id.* at 10).

As discussed above, though, Defendant's view is too narrow. As this Court has said, "Section 1182. . . is an antidiscrimination statute in the traditional vein," and these laws "'bar a neutral practice. . . adopted with an invidious *intent* to harm a protected group.'" (Doc. 95 at 7–8, quoting *DaVita*, 978 F.3d at 369 (Murphy, J., dissenting)). Discovery of records from other clients, as Plaintiffs argue, could show a pattern or practice of discriminating against patients with end stage renal disease.

But relevancy is not Defendant MedBen's only objection. It says that producing the records would be too onerous, representing it "would conservatively take years of effort even assuming multiple employees dedicate[ed] their full work schedule to the project." (Doc. 119-1 at 11). Further, it explains in the parties' Joint Status Report that it "averages over 180 self-funded benefit plan customers per year, many of which have multiple plans." (*Id.*). Because Defendant

7

MedBen serves as a "steward of claim records owned" by these plans, it says that HIPAA requirements make its electronic systems not conducive to discovery. (*Id.*). Defendant provides no evidence in support of these claims. Instead, it generally states that "printing, scanning, loading, redaction and related expenses" would be burdensome, and multiple full-time employees would be required to fulfill Plaintiffs' request. (*Id.*). So, as previously discussed, Defendant's assertions, on their own, are likely not enough to demonstrate an undue burden. *See Corcept Therapeutics, Inc. v. Elliott*, No. 1:22-mc-24, 2022 WL 17338515, at *8 (S.D. Ohio Nov. 30, 2022) ("Respondent cannot simply rely on the mere assertion that compliance would be burdensome without showing the manner and extent of the burden . . . Moreover, Respondent has not put forth any evidence in support of his claim of undue burden, and consequently, he has failed to meet his burden." (internal quotations and citations omitted)).

Still, based on the briefing, the Court is not certain that the likely benefit of the materials outweighs the burden or expense of production for all of Defendant's 180 clients. At base, what Plaintiff seems to seek is information about Defendant's *comparable* clients, meaning those who have implemented similar alternative dialysis payment plans to the Plan in this case since 2012. When narrowed in this way, the Court agrees with Plaintiffs that this information is likely relevant and discoverable. But Defendant MedBen has raised concerns about the burden and expense of producing patient claim records, policies, and other documents for its 180 clients, and Plaintiffs have not shown that materials from all of these clients are necessary. For instance, Plaintiffs say they already have existing records that "establish that at least some other non-Marietta plans are implicated." (Doc. 119-1 at 9). Also, Plaintiffs may have some relevant records in their possession from patients who received treatment at DaVita clinics. (*Id.*). Consequently, Plaintiffs may be able to narrow their request.

8

Accordingly, the parties should determine their priorities for this area of discovery and then attempt to resolve the dispute. The Court **ORDERS** the parties to meet and confer and file a joint status report within ten (10) days of this Order, informing the Court of the parties' plan for this discovery issue moving forward.

### B. Emails and ESI from Defendants

Plaintiffs also seek more information from all Defendants on how they conducted their searches for electronically stored information. First, Plaintiffs represent that Defendant MedBen has produced few internal emails and almost no communications with the other Defendants in response to Plaintiffs' discovery requests. (Doc. 114-1 at 8). After the parties conferred, Defendant MedBen declined to explain how it "searched for potentially responsive email correspondence and other electronically stored information and to identify the relevant custodians and servers that were searched." (Doc. 119 at 3). For its part, Defendant MedBen generally says that a legal hold was issued and that reasonable search efforts were undertaken. (Doc. 119-1 at 15–16). As a compromise, Defendant has appointed a corporate representative that could be deposed on these discovery matters. (*Id.* at 116).

Similarly, Plaintiffs ask this Court to order Defendants Marietta and the Plan to answer questions about search terms and the methodology used to produce electronically stored information. According to the parties, the relevant dialysis services payment decisions for this case were made by Tricia Engfehr, a former employee of Defendant Marietta. (Doc. 119-1 at 18). Ms. Engfehr left her job nearly ten years ago, and her emails have been deleted. (*Id.* at 18–19). But Defendants Marietta and the Plan say that a current employee, Dan Weaver, "has searched his emails and a good faith effort has been made to search for information" responsive to Plaintiff's discovery requests. (Doc. 119-1 at 19). Defendants also represent that other email accounts have

9

been searched. (*Id.*). Yet Defendants Marietta and the Plan have provided no details on how these searches were conducted or who, besides Mr. Weaver, performed them. And Plaintiffs say that these Defendants have produced only one email to date. (Doc. 119 at 17).

Again, the parties must do more to resolve their disputes. Plaintiffs' concerns over Defendants' ESI production are not unfounded, considering the small number of documents produced and Defendants' unwillingness to share basic information about their search efforts. Since Defendants have not provided anything more than vague statements, "the Court really does not have a record of what defendants did or did not do to find ESI, or what the actual state of defendants' ESI happens to be." *Ruiz-Bueno v. Scott*, 2013 WL 6055402, at *3 (S.D. Ohio Nov. 15, 2013). In hindsight, the parties should have worked collaboratively "once it became apparent that a dispute was brewing over ESI." *Id.* at *4; *see also* Fed. R. Civ. P. 26(f)(3)(C) (stating that the parties should discuss when forming their discovery plan "any issues about disclosure, discovery, or preservation of electronically stored information"); *Brown v. Tellermate Holdings Ltd.*, 2:11-cv-1122, 2014 WL 2987051, at *1 (S.D. Ohio July 1, 2014) ("Discovery is, under the Federal Rules of Civil Procedure, intended to be a transparent process."). But with the information available at this time, the Court finds its intervention is not yet warranted.

Therefore, the parties are **ORDERED** to meet and confer on their ESI issues. The parties are further **ORDERED** to file a joint status report within ten (10) days of this order, explaining the parties' plan moving forward and updating the Court on the progress of this dispute.

10

### C. Defendants' Litigation Holds

Finally, throughout the Joint Status Report, Plaintiffs complain that Defendants provided little information on their litigation holds. (*See* Doc. 119 at 3; Doc. 119-1 at 13, 17). While the fact that a litigation hold was implemented is not privileged or protected by work-product doctrine, "litigation hold letters generally are privileged and not discoverable." *Safelite Grp., Inc. v. Lockridge*, No. 2:21-cv-04558, 2022 WL 17842945, at *4 (S.D. Ohio Dec. 22, 2022). "[I]f a party makes a preliminary showing of spoilation, the court may order the production of litigation hold letters." *Id.* (quoting *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3:12-cv-00463, 2015 WL 13729725, at *6 (M.D. Tenn. Dec. 1, 2015)). Here, Plaintiffs have not made that showing. (*See generally* Docs. 114, 119, 119-1). So, to the extent that Plaintiffs' motion requests more information on Defendants' litigation holds, their Motion is **DENIED without prejudice.** Should issues of spoilation arise, Plaintiffs may seek relief from the Court at that time.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **GRANTED in part.** Pending the parties' upcoming status report, briefing on Plaintiffs' Motion to Compel (Doc. 114) remains **STAYED.** The Court **ORDERS** the following:

- Defendant MedBen is **ORDERED** to produce, **within thirty (30) days of this Order**, records, documents, and other information in its custody related to the Plan and its dialysis claims dating back **to January 1, 2012**.

- The parties are **ORDERED** to meet and confer on Plaintiffs' request to Defendant MedBen for materials for comparable clients who implemented similar alternative dialysis payment plans to the Plan in this case. The parties must also confer on their ESI search efforts and related issues. **Within ten (10) days of this Order**, the parties are **ORDERED** to file a

11

joint status report, updating the Court on the parties' progress and providing the Court with their plans to resolve these discovery issues.

IT IS SO ORDERED.


Date:  March 6, 2024                                /s/ Kimberly A. Jolson
                                                    KIMBERLY A. JOLSON
                                                    UNITED STATES MAGISTRATE JUDGE