IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVITA INC., et al.,**

      **Plaintiffs,**

   v.                                   **Civil Action 2:18-cv-1739**
                                                    **Judge Sarah D. Morrison**
**MARIETTA MEMORIAL**                     **Magistrate Judge Kimberly A. Jolson**
**HOSPITAL EMPLOYEE**
**HEALTH BENEFIT PLAN, et al.,**

      **Defendants.**

## ORDER AND OPINION

Before the Court is Plaintiffs' Motion for Attorney Fees (Doc. 138). For the following reasons, the Motion is **GRANTED in part and DENIED in part**.

**I.    BACKGROUND**

This Court has previously summarized the events and allegations giving rise to this action:

This action concerns claims brought under 29 U.S.C. § 1182 and the Employee Retirement Income Security Act of 1974 (ERISA) § 502. Plaintiffs are dialysis care providers who provided care to Patient A while Patient A was suffering from end-stage renal disease. (Doc. 62 at ¶¶ 11–12). In April 2017, when Plaintiff DaVita began providing dialysis care to Patient A, Patient A was a participant in the Marietta Memorial Hospital Employee Health Benefit Plan[.] (*Id.* at ¶¶ 20, 29). Defendant Marietta Memorial Hospital . . . established and maintains the Plan, and Defendant Medical Benefits Administrators, Inc. . . . serves as the Plan's medical benefits manager. (*Id.* at ¶¶ 13–15).

Plaintiff DaVita alleges that the Plan "reimburses dialysis services at a depressed rate." (Doc. 95 at 2 (internal quotation omitted)). More specifically, Plaintiffs say that the Plan offers no network of contracted dialysis providers and instead provides reimbursement "based on a reasonable and customary fee if a provider is out-of-network." (Doc. 62 at ¶ 25–26). But unlike other out-of-network services, the Plan provides "an alternative basis of payment applicable only to dialysis-related services and products." (*Id.* at 26–27 (internal quotations omitted)). According to Plaintiffs, "[t]he Plan will reimburse out-of-network dialysis providers a reasonable and customary amount that will not exceed the maximum payable amount

>applicable[,] which is typically one hundred twenty-five percent (125%) of the current Medicare allowable fee." (Doc. 95 at 3 (internal citations and quotations omitted)). For dialysis services, the Plan "pays 70% of the 125% of the Medicare rate," which is "already far below the industry-wide definition of a 'reasonable and customary' fee." (*Id*., quoting Doc. 62 at ¶¶ 25–28). Accordingly, Plaintiffs allege "that the Plan discriminate[s] against its enrollees suffering from [early onset renal disease] by eliminating network coverage for enrollees with [early onset renal disease] and, by extension, by exposing enrollees to higher costs." (Doc. 62 at ¶ 73).

(Doc. 120 at 1–2).

The instant Motion for Attorney Fees relates to the parties' months-long discovery dispute. On February 9, 2024, Plaintiffs filed a Motion to Compel discovery responses from Defendants Marietta Memorial Hospital Employee Health Benefit Plan ("the Plan"), Marietta Memorial Hospital ("Marietta"), and Medical Benefits Mutual Life Insurance Co. ("MedBen"). (Doc. 114). By that time, Plaintiffs had sent Defendants multiple letters outlining alleged deficiencies with Defendants' discovery responses, and the parties had engaged in two telephone conferences. (*See* Docs. 143 at 15 (discussing the parties' conferral efforts before Plaintiffs' Motion to Compel); 114-3 (Plaintiff's September 2023 letter to Defendants regarding discovery requests); 114-10 (Defendants Marietta and the Plan's letter to Plaintiffs); 114-15 (emails exchanged between the parties on discovery requests); 114-18 (Plaintiffs' January 2024 letter to Defendants Marietta and the Plan); 114-19 (Plaintiffs' January 2024 Letter to Defendant MedBen); 114-20 (Defendants Marietta and the Plan's response to the January letter); 114-21 (Defendant MedBen's response to the January letter)).

After Plaintiffs filed the Motion to Compel, the Court ordered the parties to engage in further conferral efforts. (Doc. 116 at 1–2). When those efforts failed, the parties filed a joint status report outlining their differences. (Doc. 119). First, Plaintiffs requested from Defendant MedBen records and information relating to dialysis claims for Marietta clients since 2012. (*Id.* at 2). But Defendant MedBen offered to produce records from 2014 to 2016 only. (*Id.*). Next,

2

Plaintiffs sought similar records for clients other than Marietta dating back to 2012, which Defendant MedBen refused to produce wholesale. (*Id.*). Finally, Plaintiffs expressed concern over the limited electronically stored information (ESI) produced by all Defendants. (*Id.* at 3–4). Consequently, Plaintiffs requested an order from the Court compelling Defendants to meet and confer over methods used to search for emails and ESI and to produce all non-privileged emails and ESI located through those conferral efforts. (*See id.* at 3–4; Doc. 114-1 at 14–15).

After this status report, the Court granted Plaintiffs' Motion in part and denied it in part. (*See* Doc. 120). On balance, the Court found the parties needed to do more to resolve their disputes. (*See generally id.*). First, the Court granted Plaintiffs' Motion as it related to records for Marietta's clients and ordered Defendant MedBen to produce "records, documents, and other information in its custody related to the Plan and its dialysis claims dating back to January 1, 2012." (*Id.* at 6). For other clients, the Court ordered the parties to confer further, noting that while the information Plaintiffs sought was relevant, it was "not certain that the likely benefit of the materials outweigh[ed] the burden or expense of production for all of [Defendant MedBen's] 180 clients." (*Id.* at 8). Specifically, the Court noted that Plaintiffs' request should be limited to Defendant MedBen's "*comparable* clients, meaning those have implemented similar alternative dialysis payment plans to the Plan in this case since 2012." (*Id.* (emphasis in original)). Lastly, the Court denied Plaintiffs' request to compel information about Defendants' litigation holds but ordered the parties to work on their ESI issues. (*Id.* at 10–11).

For the next month, the parties negotiated (*see* Docs. 121, 124, 127), and the Court ordered them to file another joint status report by April 8, 2024. (*See* Docs. 122, 124). At this point, it appeared that Plaintiffs and Defendant MedBen were finding compromises. (Doc. 124 at 2). But the Court had to intervene on ESI issues between Plaintiffs and Defendants Marietta and the Plan. In the April 8 status report, Plaintiffs explained that after the Court's previous order, Plaintiffs had "identified additional custodians that were not included in Marietta's prior [ESI] search and

3

collection and provided additional search terms for Marietta to use if it insisted" on using Microsoft Outlook's basic search function to find responsive emails. (Doc. 124 at 3 (noting that Defendants Marietta and the Plan refused to use a litigation platform that supports Boolean search methods)). For weeks, Plaintiffs received no response from Defendants Marietta and the Plan. (*Id.* at 3). After Plaintiffs sent another letter on April 1, Defendants responded without answering several of Plaintiffs' questions. (*Id.*). For example, Defendants did not identify any coworkers of Tricia Engfehr, a critical custodian whose emails and files had long been deleted. (Doc. 124 at 3 n.1; *see* Doc. 119 at 3–4). Defendants also did not explain whether they use an email archiving system or whether other responsive emails dating back to 2012 might exist. (Doc. 124 at 3 n.1). These explanations were crucial because Defendants Marietta and the Plan previously represented that Tricia Engfehr was the decision-maker on the challenged Plan terms, but her emails had been deleted years before this litigation began. (Doc. 119-1 at 16–19).

Notably, Defendants Marietta and the Plan did not participate in the April 8 status report. (*See generally* Doc. 124). So, the Court ordered them to respond. (Doc. 125). In their response, Defendants said Plaintiffs asked them to use forty-seven search terms, which they found to be overly burdensome. (Doc. 127 at 1). But again, the Court disagreed. In an April 15 order, the Undersigned found that Defendants Marietta and the Plan's conduct was "unreasonable." (Doc. 128 at 1). The Court further noted that Plaintiffs proposed forty-seven search terms only "because Defendants refuse[d] to use a litigation platform to streamline searches." (*Id.* at 2). With that, the Undersigned ordered the parties to confer again on ESI search efforts and find a solution. (*Id.*).

In total, between March 2024 and May 2024, the parties filed six status reports. (Docs. 121, 124, 127, 129, 131, 133). During that time, the Court set and twice rescheduled an in-person hearing on these disputes. (Docs. 128, 132, 134). In the end, the parties notified the Court on May 8, 2024, that they had resolved their differences. (Doc. 133). The Court ordered them to file a stipulation memorializing the agreement. (Doc. 134). While this summary does not encapsulate

4

all the parties' agreements, based upon the stipulation, the parties agreed to the following:

- **Defendant MedBen's Clients Other Than Marietta:** From January 1, 2012, through August 1, 2016, 84 MedBen clients adopted alternative dialysis payment terms, yet only nineteen of those clients submitted dialysis claims to MedBen as a third-party administrator during that period. For those nineteen clients, Defendant MedBen agreed to produce compilation reports for relevant records in spreadsheet format. (Doc. 139 at 2). For the 84 clients, Defendant MedBen will provide a list of dates on which they "adopted alternate dialysis payment terms between January 1, 2012, and August 1, 2016." (*Id.* at 3).

- **Defendant MedBen and ESI Issues:** Defendant MedBen also agreed to collect emails for various employees who would have had materials related to clients that adopted alternative dialysis payment terms from January 1, 2012, through August 1, 2016. (*Id.* at 3). Additionally, it agreed to collect share drives and other ESI from relevant custodians. (*Id.*). Once collected, Defendant MedBen agreed to upload those materials to an e-discovery litigation platform. (*Id.* at 3). After that, the parties will work together to develop search terms, review hits reports, and engage in good-faith discussions on what documents Defendant MedBeen must review and produce. (*Id.* at 3–4).

- **Defendants Marietta and the Plan and ESI Issues:** Defendant Marietta agreed to produce additional emails and electronically stored information. (*Id.* at 4–5). Like Defendant MedBen, Defendant Marietta also agreed to use an e-discovery platform, produce a hits report, and discuss which documents would be reviewed and produced. (*Id.*).

Because this discovery dispute caused the parties to miss their discovery deadline, the Court ordered them to propose a case schedule. (Doc. 134). Continuing the trend of discord, the

parties proposed separate plans. (Docs. 135, 137). Defendants proposed a schedule with uncertain deadlines. (*See* Doc. 135 at 2). These deadlines were based on Defendants' estimated timeline for completing ESI discovery, which they represented would take eight months. (*Id.*). Plaintiffs responded to that proposal and said Defendants never informed them that e-discovery would take eight months and did not confer in good faith on the proposed schedule. (Doc. 138).

In that filing, Plaintiffs also asked the Court to award them "reasonable costs and expenses, including attorney's fees" for the discovery dispute. (*Id.* at 3–4). Consequently, the Court set both a case schedule and a briefing schedule for Plaintiffs' Motion for Attorney Fees. (Doc. 140). The matter is now ripe for review. (Docs. 138, 141, 142, 143).

## II. STANDARD

The Federal Rules of Civil Procedure provide that when a motion to compel discovery is granted, or if the "requested discovery is provided after the motion was filed," "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). But a court should not award fees if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.*

Courts have more discretion when a motion to compel is granted only in part. In those circumstances, courts "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C); *Wright v. State Farm Fire and Cas. Co.*, No. 2:12-cv-409, 2013 WL 1945094, at *6 (S.D. Ohio May 9, 2013). In doing so, courts must consider factors such as willfulness, bad faith, and prejudice, along with whether the opposing party's initial response to the discovery request was reasonably justified. *See Safelite Grp., Inc. v. Lockridge*, No. 2:21-cv-04558, 2023 WL 2692344, at *5 (S.D. Ohio Mar. 29, 2023) (citing *Canter*

6

*v. Alkermes Blue Care Elect Preferred Provider Plan*, No. 1:17-cv-399, 2019 WL 1760175, at *2 (S.D. Ohio Apr. 22, 2019), *report and recommendation adopted*, No. 1:17-cv-399, 2019 WL 2124471 (S.D. Ohio May 15, 2019)); *Advantage Indus. Sys., LLC v. Aleris Rolled Products, Inc.*, No. 4:18-cv-00113, 2020 WL 4432415, at *19 (W.D. Ky. July 31, 2020). Further, "[a]n award of sanctions under Rule 37(a)(5)(C) has been held to be inappropriate where the parties prevailed on a motion to compel 'in approximate equal degree.'" *Canter*, 2019 WL 1760175, at *2 (quoting *Wright*, 2013 WL 1945094, at *6).

### III. DISCUSSION

Plaintiffs argue that Defendants have agreed to produce nearly everything that they moved to compel in February 2024, so they are entitled to fees under Rule 37(a)(5)(A). (Doc. 138 at 3–4; Doc. 143 at 11–14). Because the Court granted Plaintiffs' Motion to Compel only in part, Rule 37(a)(5)(C) fits better here. *Canter*, 2019 WL 1760175, at *3. And the decision whether to order Defendants to pay Plaintiffs' reasonable expenses is soundly within the Court's discretion.

#### A. Defendant MedBen

Plaintiffs say that Defendant MedBen ignored its basic discovery obligations until they filed their motion to compel in February 2024. (Doc. 143 at 1–2, 11–12, 14). And they argue that Defendant MedBen's failure to engage in discovery was not justified because the Court and the Sixth Circuit expressly found that further discovery may support Plaintiffs' claims. (Doc. 143 at 17–18). Plaintiffs are correct that those courts acknowledged that "[d]iscovery may yield evidence of Defendants' motive for instituting unique reimbursement terms for dialysis services." (Doc. 95 at 8 (citing *DaVita, Inc., et al. v. Marietta Memorial Hospital Employee Health Benefit Plan, et al.*, 978 F.3d 326, 347 n.14 (6th Cir. 2020), *rev'd in part*, 142 S.Ct. 1968 (2022)). But the decisions said nothing about the appropriate scope of discovery, and Defendants made valid objections on that basis.

Largely, Defendants objected based on undue burden, which the Court acknowledged in

7

its decision on Plaintiffs' Motion to Compel. (*See generally* Doc. 120). For instance, for Plaintiffs' request for documents related to clients other than Marietta, Defendant MedBen argued that it had already produced thousands of pages of documents and claims records, and additional document review for this request would cost thousands of dollars. (Doc. 119-1 at 4–5, 12). Additionally, Defendant MedBen asserted that its electronic records system is not suited to producing materials for litigation. (*Id.* at 6–8, 11–12). Specifically, Defendant MedBen said that to identify records, it would have to search by timeframe, manually filter for dialysis claims, access multiple databases one-by-one per claim, and then open the individual record to review whether it is responsive. (Doc. 119-1 at 7–8). The Court acknowledged these arguments in its order on the Motion to Compel, noting it was uncertain whether "the likely benefit of the materials outweighs the burden or expense of production for all of [Defendant MedBen's] 180 clients." (Doc. 120 at 8). Accordingly, the Court ordered the parties to confer on whether Plaintiffs' request could be narrowed. (*Id.*).

In the end, the parties did limit what Defendant MedBen had to produce. The parties agreed that Defendant MedBen would produce compilation reports for nineteen non-Marietta clients and dates on which the 84 non-Marietta clients adopted alternative dialysis payment terms. (Doc. 139 at 2–3). Still, Plaintiffs argue that these clients are the only ones who would have documents responsive to their original discovery requests, so essentially, Defendant MedBen must produce everything Plaintiffs originally moved to compel. (Doc. 143 at 12–13). Yet as discussed above, the parties significantly limited the format in which Defendant MedBen had to produce these materials. Instead of producing individual records that would be burdensome to review and produce, the parties agreed that compilation reports in a spreadsheet format would suffice. (*Id.* at 18 n.5).

Still more, Defendant MedBen substantively objected to this discovery request. For instance, Defendant argued that since "this action is anchored in an assignment from Patient A" who was a member of the Plan, other plans' records were not relevant. (Doc. 119-1 at 10–11).

8

Plus, Defendant noted that discovery in typical ERISA cases is narrow and asserted that Plaintiffs' requests went beyond that scope. (*See id.* ("DaVita's demand for documents and data associated with plans and clients of MedBen other than Marietta constitutes broad document discovery that is simply not in keeping with Congress's intent that ERISA be an expeditious, economical and efficient proceeding to resolve claims, nor with federal court decisions that allow necessary but not excessive discovery." (internal quotation omitted) (emphasis in original removed))).  Indeed, in typical ERISA cases, discovery "generally is not permitted . . . and a district court may ordinarily review only the administrative record." *Canter v. Alkermes Blue Care Elect Preferred Provider Plan*, 328 F.R.D. 485, 495 (S.D. Ohio 2018) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998)).  Case law is clear that when plaintiffs raise ERISA claims that warrant additional discovery, discovery is still not unlimited. *See id.* at 495–96 (discussing how discovery is limited in certain ERISA cases).  Instead, courts "must balance the claimant's interest in obtaining relevant information against the primary goal of ERISA of providing inexpensive and expeditious resolution of claims." *Sims v. Reliance Standard Life Ins. Co.*, No. 1:15-cv-390, 2016 WL 319868, at *4 (S.D. Ohio Jan. 26, 2016) (internal quotation omitted).

Ultimately, though, the Court disagreed with Defendant MedBen and found records from other clients to be potentially relevant to Plaintiffs' claim. (Doc. 120 at 7–8).  While Defendant's arguments were not enough to preclude discovery of non-Marietta clients, the Court does not find them so baseless as to warrant payment of Plaintiffs' expenses. *See Advantage Indus. Sys., LLC*, 2020 WL 4432415, at *19 ("If the party's initial response is reasonably justified an award of reasonable expenses is not appropriate."); *Liang v. AWG Remarketing, Inc.*, 2:14-cv-0099, 2015 WL 8958884, at *13 (S.D. Ohio Dec. 16, 2015) ("[A]lthough the Court ultimately disagreed with Liang's position at times as to the issue of waiver of the attorney client privilege and the requests for production of documents, Liang cited to the record and relied on legal authority when responding to the Motion. For these reasons, the Court concludes that an award of sanctions [under

9

Rule 37(a)(5)(C)] would be inappropriate.").

Defendant MedBen's efforts surrounding ESI are a closer call. Plaintiffs are correct that in their original Motion to Compel, they sought an order compelling Defendants to confer in good faith on ESI search efforts. (Doc. 114-1 at 15). Now, the parties' stipulation requires just that. (Doc. 143 at 13–14). Even so, the Court does not find that Defendant MedBen acted willfully or in bad faith throughout this process or that an award of expenses is justified.

In opposing the Motion to Compel, Defendant MedBen stated that "a legal hold was issued, that appropriate custodians . . . directly participated in the identification and collection effort with counsel of records responsive to DaVita's multiple rounds of document requests, and that the appropriate production has been completed." (Doc. 119-1 at 15 (citing case law in support of this argument)). Defendant MedBen proposed that a corporate representative deposition was the more appropriate avenue for Plaintiffs to gain more information about its ESI search efforts. (*Id.* at 16). In the end, the Court ordered the parties to confer on their ESI issues, concluding that judicial "intervention [was] not yet warranted." (Doc. 120 at 10).

Over the next two months, Defendant MedBen complied with that order. Soon after, Defendant MedBen provided more information about its litigation holds and explained how it searched for responsive ESI. (Doc. 121 at 4–5). Further, Defendant MedBen proposed compromises for their discovery disputes and interviewed numerous ESI custodians to try and resolve the parties' issues. (Docs. 124 at 2 (status report from April 8, 2024); Doc. 129 at 3 (status report from April 22, 2024, discussing that that Defendant MedBen required more time to determine whether Plaintiff's three-step proposal would be appropriate); Doc. 131 at 2–3 (April 30, 2024, status report on the parties' ongoing negotiations over ESI)). The Court did not intervene again on ESI issues between Plaintiffs and Defendant MedBen. (*See* Docs. 125, 128 (addressing only ESI issues with Defendants Marietta and the Plan), 130, 132)).

The Court understands Plaintiffs' frustration with Defendant MedBen's initial reluctance

to share any information about its ESI searches before the Motion to Compel. And these disputes were prejudicial, as they caused a six-month delay to the close of discovery. (*See* Doc. 106 (noting discovery closes May 6, 2024), 140 (setting the close of discovery for November 1, 2024)). But after the Court ordered the parties to confer on their ESI issues, Defendant MedBen worked in good faith to develop solutions and find information responsive to Plaintiffs' request. Accordingly, the Court declines Plaintiffs' request for expenses as it relates to Defendant MedBen.

### B. Defendants Marietta and the Plan

But the Court finds that Defendants Marietta and the Plan should pay some of Plaintiffs' expenses and fees for their dispute on ESI search efforts. Defendants Marietta and the Plan say that the heart of their dispute with Plaintiffs was that "Plaintiffs could not understand why Tricia Engfehr has no emails." (Doc. 141 at 1). That interpretation is wholly inaccurate. This dispute centered on Defendants Marietta and the Plan's refusal to confer and share any information on its ESI search efforts. Although Defendants Marietta and the Plan assert they worked in good faith to resolve the disagreement (Doc. 141 at 4–5), a review of the record shows otherwise.

Before Plaintiffs filed the Motion to Compel, Defendants Marietta and the Plan had produced only one email. (Doc. 114-1 at 14). While these Defendants told Plaintiffs that only employees Tricia Engfehr and Dan Weaver made the relevant decisions for the Plan, they did not provide Plaintiffs with any information on when those employees left or what efforts were undertaken to search for responsive materials these employees once possessed. (*See* Doc. 114-20 (letter from Defendants Marietta and the Plan from January 2024, responding to Plaintiffs' letter on discovery response deficiencies)). What's more, Defendants did not reveal that Tricia Engfehr's emails had been deleted until nearly three weeks after Plaintiffs filed their Motion. (Doc. 143 at 8 (citing Doc. 119-1 at 18–19)). At that point, Defendants Marietta and the Plan still refused to explain "the parameters of the [ESI] searched conducted." (Doc. 119 at 4; *see, e.g.*, Doc. 119-1 at 19 ("Other email accounts in the human resources department have also been

11

searched and no responsive emails exist.")).

As a result, the Court ordered the parties to confer, noting that "Plaintiffs' concerns over Defendants' ESI production are not unfounded, considering the small number of documents produced and Defendants' unwillingness to share basic information about their search efforts." (Doc. 120 at 10). Only then did Defendants Marietta and the Plan disclose more details. Defendants revealed that three custodians had searched their own emails for responsive materials using the basic search function of Microsoft Outlook. (Doc. 121 at 2). The custodians searched only three terms. (*Id.*). So, Defendants Marietta and the Plan invited Plaintiffs to suggest more search terms. (*Id.*).

Plaintiffs accepted the invitation and suggested forty-seven search terms and additional custodians on March 14, 2024. (Doc. 124 at 3). Plaintiffs also offered to condense the number of search terms if Defendants would agree to use a litigation platform that supports Boolean search terms. (*Id.*). Defendants did not respond. So, on April 1, Plaintiffs sent another letter requesting a meet-and-confer. (*Id.*). Instead of coming to the table, Defendants Marietta and the Plan responded by letter on April 4, objecting to the number of search terms and calling Plaintiffs' requests "borderline harassment." (Doc. 124-3 at 2–3). Then, Defendants did not participate in the Court-ordered joint status report on April 8, 2024, due to a power outage. (Doc. 124 at 7). Defendants Marietta and the Plan represented they would file their position statement the following day. (*Id.*). But they did not. (Doc. 125 (noting in an order dated April 11, 2024, that Defendants still had not filed their position statement)). As a result, the Court had to order another status report. (*Id.* at 1).

Once these Defendants filed their response (Doc. 127), the Court found that Defendants Marietta and the Plan's unwillingness to confer further was "unreasonable." (Doc. 128 at 1 (noting Defendants only wanted to search an additional four to seven terms)). Specifically, the Court highlighted that Defendants' concerns regarding burden were "of their own making," since they

12

refused to use a litigation platform that would allow for Boolean search methods or work with Plaintiffs to narrow the list of terms. (*Id.* at 1–2). Consequently, the Court again ordered the parties to confer on ESI issues. (*Id.*). On May 8, 2024—three months after Plaintiffs filed their Motion to Compel—the parties finally reported that the disputes were settled. (Doc. 133 at 3).

Given this history, an award of expenses under Rule 37(a)(5)(C) does not fit squarely here. When the Court initially ruled on Plaintiffs' motion to compel, it did not grant Plaintiffs' requests concerning ESI outright. Instead, the Undersigned found the parties needed to do more on their ESI disputes and ordered them to confer. (Doc. 120 at 10). But Defendants Marietta and the Plan refused to do so until the Court issued a second order, set an in-person hearing, and expressed an "inten[t] to shift fees to the losing party [of this dispute]." (*See* Doc. 128). With this posture, the Court finds it more appropriate to analyze whether sanctions against these Defendants are warranted for failure to comply with a discovery order. *See* Fed. R. Civ. P. 37(b)(2).

Rule 37 "authorizes sanctions when a party fails to make disclosures or to cooperate in discovery, or fails to comply with a Court order compelling discovery." *Calloway Cleaning & Restoration, Inc. v. Burer*, No. 1:22-cv-12, 2023 WL 7091933, at *4 (S.D. Ohio Oct. 26, 2023) (citing Fed. R. Civ. P. 37). In those situations, the Court "must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(b)(2)(C).

Here, the Court finds Defendants Marietta and the Plan failed to comply with the Undersigned's initial order to confer. (*See* Doc. 120 at 10; Doc. 128). Instead, they ignored Plaintiffs' letters and requests for meet-and-confers, criticized Plaintiffs' discovery efforts as "borderline harassment," and did not timely participate in a Court-ordered status report. (*See* Doc. 124 at 2–4; Doc. 124-2; Doc. 124-3; Doc. 125). Only when the Court again ordered them to confer did Defendants reverse course. This dilatory conduct needlessly prolonged discovery. Plus, it cost

13

Plaintiffs time and money as they tried to force Defendants to comply with their discovery obligations and this Court's order.

In their briefing, Defendants offer little in defense of their actions other than baldly asserting their noncompliance was "substantially justified." (Doc. 141 at 4). The Undersigned disagrees. While Defendants Marietta and the Plan objected to Plaintiffs' ESI requests based on burden, these Defendants had to produce significantly less than Defendant MedBen. Indeed, Defendants Marietta and the Plan admit that "Defendant MedBen has exponentially more work to do with regard to discovery," and the "issue of extra time needed to prepare discovery is generally a Defendant MedBen issue." (Doc. 141 at 3). This is partially because Defendants Marietta and Plan relied on Defendant MedBen to produce some materials Plaintiffs requested. (*See, e.g.*, Doc. 114-10 at 24–27 (noting Defendant MedBen provided certain documents); Doc. 114-11 at 2 (explaining that Defendant MedBen maintains certain information); Doc. 114-20 (stating they rely on Defendant MedBen for certain services in response to discovery requests)). Further, Defendants offered no explanation why identifying more custodians, discussing search efforts, or using an e-discovery platform were overly burdensome tasks. (*See generally* Doc. 127). Instead, it appears that Defendants Marietta and the Plan resisted engaging in any further discovery until the Court said otherwise. (*Id.*; Doc. 128).

Nor do these Defendants explain why an award of expenses and fees would be unjust here. First, Defendants Marietta and the Plan detail their efforts since Plaintiffs' motion to compel and say they acted in "good faith." (Doc. 141 at 2–3, 4). But as previously discussed, Defendants did very little until the Court intervened a second time. Second, Defendants Marietta and the Plan argue sanctions are inappropriate because Plaintiffs prematurely filed their motion to compel. (Doc. 141 at 4). But the Court is awarding fees for what occurred after the Motion was filed. Specifically, the Court finds Defendants' actions once the Court told them to meet and confer were unreasonable. So, the timing of the initial Motion to Compel makes no difference.

14

At base, "[t]he purpose of a discovery sanction is to 'assure both future compliance with the discovery rules and to punish past discovery failures, as well as to compensate a party for expenses incurred due to another party's failure to properly allow discovery." *Thompson v. Village of Mt. Pleasant, Ohio*, No. 2:10-cv-93, 2011 WL 31106, at *2 (S.D. Ohio Jan. 4, 2011) (quoting *Jackson by Jackson v. Nissan Motor Corp. in USA*, 888 F.2d 1391 (table), 1989 WL 128639, at *3 (6th Cir. Oct. 30, 1989)). While Defendant MedBen worked in good faith to resolve its disputes, Defendants Marietta and the Plan did not. (Doc. 128). Put simply, Defendants Marietta and the Plan refused to confer with Plaintiffs as ordered until the threat of sanctions and an in-person hearing weighed over their head.

Accordingly, the Court finds Defendants Marietta and the Plan should pay Plaintiffs' reasonable expenses and attorneys' fees incurred after the Court first ordered them to confer, (Doc. 120), until May 8, 2024, when the parties reported their disputes were resolved. (*See* Doc. 133). But in their Motion for Attorney Fees, Plaintiffs did not quantify or document their claim for expenses. (Doc. 138; Doc. 143 at 14). The Court will provide Defendants Marietta and the Plan with an opportunity to respond and address the reasonableness of the expenses and fees claimed. Accordingly, the Undersigned sets the following briefing schedule:

- Plaintiffs' memorandum quantifying their claim for expenses and fees is **due July 8, 2024**.
- Defendants Marietta and the Plan's response is due **July 18, 2024.**
- Plaintiffs' reply is due **July 25, 2024.**

IV. **CONCLUSION**

Plaintiffs' Motion for Attorney Fees (Doc. 138) is **GRANTED in part**. Plaintiffs are **ORDERED** to file a memorandum quantifying their claim for reasonable expenses on or before July 8, 2024. Defendants Marietta and the Plan are **ORDERED** to respond on or before July 18, 2024. Plaintiffs' reply is due July 25, 2024.

IT IS SO ORDERED.

15

Date: June 28, 2024 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE