IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVITA INC., et al.,**

      **Plaintiffs,**

  v.                                 Civil Action 2:18-cv-1739
                                       Chief District Judge Sarah D. Morrison
                                       Magistrate Judge Kimberly A. Jolson

**MARIETTA MEMORIAL
HOSPITAL EMPLOYEE
HEALTH BENEFIT PLAN, et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Memorandum for Attorneys' Fees and Costs (Doc. 145). Plaintiffs' request for fees is **GRANTED in part**. The Court lowers the requested fees from $114,065.16 to a total award of $59,629.38. Defendants Marietta and the Plan are **ORDERED** to pay the award **within thirty (30) days of the date of this Order**.

**I.    BACKGROUND**

The Court previously summarized the parties' lengthy discovery dispute. (Doc. 144 at 1–6). Briefly, on February 9, 2024, Plaintiffs filed a motion to compel discovery responses from Defendants Marietta Memorial Hospital Employee Health Benefit Plan ("the Plan"), Marietta Memorial Hospital ("Marietta"), and Medical Benefits Mutual Life Insurance Co. ("MedBen"). (Doc. 114). On March 6, 2024, after the parties failed to resolve their differences extrajudicially, the Court granted Plaintiff's motion only in part. (Doc. 120). The Court further ordered the parties to confer on Defendants' search efforts for electronically stored information (ESI). (*Id.* at 11–12). On May 8, 2024, the parties reported their disputes were resolved. (Doc. 133).

Then, Plaintiff moved for attorneys' fees under Federal Rule of Civil Procedure 37, arguing

that Defendants produced everything Plaintiffs moved to compel. (Doc. 138 at 3–4). In the end, the Court concluded that only Defendants Marietta and the Plan should pay Plaintiffs' fees. (Doc. 144 at 11). Specifically, the Court awarded fees under Federal Rule of Civil Procedure 37(b)(2)(C) because Defendants Marietta and the Plan failed to comply with the March 6 order to confer. (Doc. 144 at 13–15). As a result, the Court ordered Defendants Marietta and the Plan to pay Plaintiffs' reasonable expenses and fees incurred between March 6 and May 8. (*Id.* at 15).

The Court directed Plaintiffs to quantify their fee request, and the Court set a briefing schedule. (*Id.*). But four days after Plaintiffs filed their Memorandum for Attorneys' Fees and Costs, (Doc. 145), Defendants Marietta and the Plan objected to the Undersigned's order granting fees. (Doc. 146). On October 3, 2024, the District Judge overruled the objections. (Doc. 168). Since then, Defendants responded to Plaintiffs' Memorandum, and the matter is ripe for review. (Docs. 145, 169, 170).

**II.     STANDARD**

Federal Rule of Civil Procedure 37(b)(2)(C), the rule from which this Order stems, provides for "reasonable expenses, including attorney's fees, caused by the failure [to comply with a court order regarding discovery]." Fed. R. Civ. P. 37(b)(2)(C). To determine what is a reasonable fee, courts typically employ the "lodestar method," which involves multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Martinez v. Blue Star Farms, Inc.*, 325 F.R.D. 212, 220–221 (W.D. Mich. 2018) (collecting cases). "While there is a strong presumption that this lodestar figure represents a reasonable fee . . . the movant bears the burden of providing that the number of hours expended and the rates claimed were reasonable." *Asamoah v. Amazon.com Servs., Inc.*, No. 2:20-cv-3305, 2021 WL 2934711, at *1 (S.D. Ohio July 13, 2021) (internal quotations and quotation marks omitted). Ultimately, the reasonableness of an award of fees under Rule 37 is soundly within the Court's discretion. *See PepsiCo v. Cent. Inv. Corp., Inc.*, 216 F.R.D. 418 (S.D. Ohio 2002) (noting that awards of fees

under Rule 37 are reviewed for abuse of discretion); *Spizizen v. Nat'l City Corp.*, 516 F. App'x 426, 431 (6th Cir. 2013) (holding that courts have discretion under Rule 37 in awarding sanctions and determining the appropriate amount).

## III. DISCUSSION

Plaintiffs request $79,522.04 in attorneys' fees and costs for their discovery efforts from March 6, 2024, until May 8, 2024. (Doc. 145 at 1). Plus, Plaintiffs ask for an award of $34,543.12, which they say represents the fees and costs they incurred in moving for fees. (*Id.* at 1–2). Defendants lob four challenges to these figures. First, they say Plaintiffs' billing rates are unreasonable. (Doc. 169 at 2–3). Second, they highlight certain times where, they believe, Plaintiffs engaged in "duplicative and unnecessary billing." (*Id.* at 3–5). Third, they assert the Court's previous order does not allow Plaintiffs to recover the additional $34,543.12. (*Id.* at 5 (arguing Plaintiffs should receive fees and expenses incurred between March 6 and May 8 only)). Finally, Defendants say that Plaintiffs request a "punitive" amount, rather than reasonable fees and expenses. (*Id.* at 5). The Undersigned addresses each argument in turn.

### A. Reasonable Rate Determination

The Court begins with Defendants' challenges to Plaintiffs' rates. In determining a reasonable hourly rate, courts "should initially assess the prevailing market rate in the relevant community." *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 369 (6th Cir. 2014) (internal quotation omitted) (emphasis in original removed); *Martinez*, 325 F.R.D. at 221 (noting a presumption in favor of the community market rule). To establish market rates, courts may look to "proof of rates charged in the community," "opinion evidence of reasonable rates," and the "attorney's actual billing rate and fee awards." *Martinez*, 325 F.R.D. at 221; *see also Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715–19 (6th Cir. 2016) (considering rates charged by other attorneys in comparable cases, counsel's actual billing rates, and a bar association report).

3

Additionally, courts may rely on their "own knowledge and experience in handling similar fee requests." *Cernelle v. Graminex, LLC*, 539 F.Supp.3d 778, 739 (E.D. Mich. 2021). Notably, courts do not always adhere strictly to market rates. *Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002) (discussing when courts may enhance awards of attorney fees). Instead, they consider a variety of factors, including: "the time and labor required"; "the skill needed to perform the legal service properly"; "the experience, reputation, and ability of the attorneys"; and "the nature and length of the professional relationship with the client." *Id.* at 435 (internal quotation omitted).

Here, four attorneys and one paralegal worked on behalf of Plaintiffs during the discovery dispute. (*See* Docs. 145-1, 145-2). They request the following hourly rates:

| Attorney Name and Title | Firm | Hourly Rate Charged |
|---|---|---|
| James W. Boswell, Partner | King & Spalding, LLP | $1,372.80 per hour |
| Darren A. Shuler, Partner | King & Spalding, LLP | $1,328.80 per hour |
| Edward A. Benoit, Associate | King & Spalding, LLP | $968 per hour |
| Jason Seufert, Paralegal | King & Spalding, LLP | $420.75 per hour |
| Traci L. Martinez, Partner | Squire Patton Boggs (US) LLP | $880 per hour |
| Kristine Wolliver, Partner | Squire Patton Boggs (US) LLP | $570 per hour |

(*See* Doc. 145-1 at 4–5; Doc. 145-2 at 5–6).

Defendants contend that these rates are unreasonable and out-of-line with the market. (Doc. 169 at 2–3). In support, Defendants offer the declaration of Stephen E. Chappelear, an experienced litigator who has served as president of numerous Ohio bar associations. (*Id.* at 2; Doc. 169-1). In his declaration, Mr. Chappelear first discusses the Ohio State Bar Association's 2019 Economics of Law Practice Study. (Doc. 169-1 at 10). That study, according to Mr. Chappelear, considered hourly rates of various Ohio attorneys and paralegals and has been used

4

by Ohio courts to determine reasonable hourly rates. (*Id.*). Based upon the study, Mr. Chappelear opines that the mean hourly rates for attorneys in Columbus is between $225 and $293, although some attorneys at larger firms have rates closer to $350. (*Id.* at 10–11). For paralegals, he claims the mean hourly rate is below $170. (*Id.* at 11).

The Court finds the study only partially helpful. Importantly, the study is five years old, and Mr. Chappelear does not account for the passage of time in his analysis. (*Id.* at 10–11); *see MCP IP, LLC v. .30-06 Outdoors, LLC*, No. 2:21-cv-581, 2023 WL 2768190, at *2–3 (S.D. Ohio Apr. 4, 2023) (declining to strictly follow this study because of its age). What's more, Mr. Chappelear provides only portions of the report; nowhere does he attach the study itself. (*See* Doc. 169-1). Still, the highlighted data shows that, by 2019 standards, Plaintiffs' rates are far higher than those charged by other practitioners in this market. (*Compare* Doc. 169-1 at 10–11 (portions of the report) *with* Docs. 145-1 at 4–5, 145-2 at 5–6 (Plaintiffs' counsels' hourly rates and experience)).

Next, Mr. Chappelear summarizes hourly rates found reasonable by federal and state courts in Ohio. (Doc. 169-1 at 11–13 (discussing cases decided between 2009 and 2021)). Based upon his summary, Defendants argue that in Columbus, "the high end of partner rates is $400 to $425 per hour, with an outlier of $600 per hour, while associates were paid $225 to $350 per hour." (Doc. 169 at 3). As a result, Defendants ask the Court to reduce Plaintiffs' rates significantly, including cutting the rates of Attorneys Boswell and Shuler by two-thirds. (*Id.*). Yet again, many of these cases are old; the timeliest opinion is from 2021. (Doc. 169-1 at 12 (citing *Swickheimer v. Best Courier, Inc.*, No. 2:19-cv-3706, 2021 WL 6033682, at *3–4 (S.D. Ohio Dec. 21, 2021)). Still, the cases suggest that Plaintiffs' requested rates are much higher than those generally charged by attorneys in this District.

5

In response, Plaintiffs make a good point. They note that even Mr. Chappelear charges more than the rates he includes in his declaration. (*Id.* (noting that Mr. Chappelear charged Defendants $715 per hour for his work on the case)). Additionally, they claim their rates are justified because "ERISA is a niche area of law that requires a certain skill level to render proper legal services." (Doc. 170 at 2 (internal quotation omitted)).

But these arguments do not merit a complete departure from the community market rule. To start, while ERISA may be a specialized area of the law, the circumstances here involved a standard discovery dispute over ESI production and search efforts. *See Martinez*, 325 F.R.D. at 222 ("Even assuming plaintiffs are correct in their characterization of the nature and complexity of the case overall, the Court must consider the novelty and difficulty of the questions presented *in the motion to compel*, and the skills needed to perform *that* legal service properly." (emphasis in original)). And Plaintiffs do not explain how this discovery dispute was more difficult or complex than a discovery dispute in any other case. (*See generally* Doc. 170). Still more, Plaintiffs submit no evidence besides counsel's affidavits to establish the reasonableness of their rates. *See Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020) ("[T]he lawyer seeking fees has the burden to show the reasonableness of his billing rate with something in addition to the attorney's own affidavits." (internal quotation omitted)). Nor do they present any arguments why they should be awarded out-of-town specialist rates. *Id.* (noting that "lawyers must make a specific showing of necessity and reasonableness [to] recover fees as 'out-of-town specialists'"); *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) (stating that the party moving for fees has the initial burden of showing entitlement to out-of-town rates).

In sum, neither party presents persuasive evidence of the current market rates for this District. Consequently, the Court must use its own knowledge and experience to determine

6

reasonable hourly rates for this case. *See Cernelle*, 539 F.Supp.3d at 739; *Jackson v. Reliance Const. Servs., LLC*, No. 1:20-cv-799, 2023 WL 4933269, at *4 (S.D. Ohio Aug. 2, 2023) ("The Court has broad discretion in determining what constitutes a reasonable hourly rate.").

To start, Plaintiffs' counsel and paralegal have extensive experience. Attorneys Boswell, Shuler, and Martinez are partners in their respective firms, and each has over 15 years of experience. (Doc. 145-1 at 4–5 (noting both Attorneys Boswell and Shuler have over 20 years of experience); Doc. 145-2 at 5 (stating Attorney Martinez has over 15 years of experience in complex litigation)). Attorney Wolliver, who recently became a partner at her firm, has ten years of experience. (Doc. 145-2 at 6). Attorney Benoit is an associate who graduated law school six years ago, and paralegal Seufert has "more than a decade of experience." (Doc. 145-1 at 5). While the discovery issues in this case were not novel or complex, Plaintiffs worked on the dispute for months. And counsel's longstanding relationships with their clients, along with their extensive knowledge and understanding of this case's history, were essential to resolving the matter. Given all this, Defendants' suggested two-thirds reduction of Plaintiffs' rates is inappropriate. (*See* Doc. 169 at 3).

Instead, the Court finds a blended rate of $725, taken from Plaintiffs' two local counsel, is reasonable for attorneys Boswell, Shuler, and Martinez. *See Cernelle*, 539 F.Supp.3d at 741 (using a blended rate to determine a reasonable hourly rate for associates). Based on the Court's knowledge and experience, as well other fee awards in this District, this hourly rate is more appropriate for partners at top firms with over a decade of experience. *See, e.g.*, *RAK Trademarks, LLC v. Comfort Dental Mason, LLC*, No. 1:22-cv-137, 2023 WL 3743022, at *2 (S.D. Ohio May 30, 2023) (approving an hourly rate of $600 for a partner with over twenty years of experience in 2023); *Smith v. FirstEnergy Corp.*, Nos. 2:20-cv-3755, 2:20-cv-3954, 2:20-cv-3987, 2022 WL

7

22691867, at *9 (S.D. Ohio Dec. 5, 2022) (awarding an hourly rate of $600 per hour for counsel with over twenty years of experience in 2022); *JJ Rods LLC v. Horchen*, No. 2:23-cv-3052, 2024 WL 4134852 (S.D. Ohio Sept. 10, 2024) (approving an hourly rate of $620 for a partner); *QFS Transp., LLC v Murphy*, No. 1:21-cv-770, 2023 WL 2785589, at *3 (S.D. Ohio Jan. 19, 2023) (finding an hourly rate of $600 reasonable for partners in 2022). The Court also finds attorney Wolliver's hourly rate of $570 to be reasonable, given that she is a partner at her firm with less experience than Plaintiffs' other counsel. Finally, the Court will set hourly rates of $480 for attorney Benoit and $210 for paralegal Seufert. *See, e.g.*, *Britton v. Mountain Run Solutions, LLC*, No. 1:21-cv-304, 2022 3908940, at *2 (S.D. Ohio Aug. 30, 2022) (approving an hourly rate of $250 for a paralegal); *QFS Transp., LLC*, 2023 WL 2785589, at *3 (finding an hourly fee of $385 per hour would be reasonable for an associate with five years of experience in 2022).

These adjusted rates, while still higher than the rates proposed by Defendants, account for counsel's expertise, years of experience, and considerable knowledge of the issues underlying the parties' discovery dispute. Further, they fairly compensate Plaintiffs for the significant time and labor they put into resolving the protracted discovery dispute. Finally, this rate also accomplishes the purposes of Rule 37 and serves as a "sufficient . . . deterrent for any future misbehavior" in discovery. *Calloway Cleaning & Restoration, Inc. v. Burer*, No. 1:22-cv-12, 2023 WL 7091933, at *7 (S.D. Ohio Oct. 26, 2023). With that, the Court turns to Defendants' billing arguments.

### B. Reasonable Hours Billed

Next, Defendants argue Plaintiffs' counsel "duplicated services" and "had more lawyers than reasonable or necessary [] perform services." (Doc. 169-1 at 13). Like hourly rates, the Court must determine whether the hours billed are reasonable. *Swickheimer*, 2021 WL 6033682, at *4; *Asamoah*, 2021 WL 2934711, at *4. To justify the hours requested, Plaintiffs must offer

8

documentation "of sufficient detail and probative value to enable the [C]ourt to determine with a high degree of certainty that such hours were actually and reasonably expended" on the parties' discovery dispute. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (internal quotation omitted). After reviewing the documentation, the Court must decide "whether the lawyer used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel." *Id.* (internal quotation omitted). To be clear, though, multiple attorneys may work on a case. *Smith,* 592 F. App'x at 372 (noting that no authority exists "stating that when multiple attorneys work on a task, only one attorney can bill his or her time"). Indeed, "representation by multiple legal counsel can be productive," despite the "danger of duplication." *Swickheimer*, 2021 WL 6033682, at *4. In the end, after examining the documentation offered, the Court must exclude hours Plaintiffs did not reasonably expend on their dispute with Defendants. *See Hines v. DeWitt*, No. 2:13-cv-1058, 2016 WL 2342014, at *4 (S.D. Ohio May 4, 2016).

In total, Plaintiffs represent they spent 71.6 hours from March 6 until May 8 on the matter. (Doc. 145-1 at 8–15; Doc. 145-2 at 9–11 (documenting hours spent participating in meet-and-confers, drafting status reports, communicating with counsel, and reviewing discovery requests and responses)). Defendants generally assert that the records show "a lack of specificity in billing," but Defendants offer no examples in support. (Doc. 169 at 4). Further, the Court finds counsel's billing records provide sufficiently detailed descriptions of what work was done during those hours. (*See generally* Doc. 145-1 at 8–15; Doc. 145-2 at 9–11). Plus, after reviewing the records, the Court does not find the number of hours billed unreasonable, considering the discovery period at issue lasted two months.

Defendants also challenge a few instances of allegedly duplicative billing. First,

9

Defendants complain that three of Plaintiffs' attorneys participated in telephone conferences with Defendants on April 17 and May 3. (Doc. 169 at 4; Doc. 169-1 at 13). But according to Plaintiffs, Defendants routinely had two lawyers and a paralegal participate in these conferences. (Doc. 170 at 3 n.1). So, seemingly, the parties were represented by similar numbers of legal professionals at their conferences. As such, the number of attorneys in attendance does not justify, on its own, a reduction of hours. *See Swickheimer*, 2021 WL 6033682, at *5 (declining to reduce hours in a case with multiple counsel because billing records showed their representation was productive).

Defendants' other challenges involve the parties' joint status reports. Specifically, Defendants protest that all five of Plaintiffs' attorneys participated in the drafting of a status report between April 5 and April 8, and four attorneys and a paralegal billed for drafting another status report between April 19 and April 22. (Doc. 169-1 at 13). Notably, though, the joint status reports at issue did not address issues with Defendants Marietta and the Plan only. Rather, they addressed discovery disputes with Defendants MedBen as well. But in its order awarding fees, the Court allowed Plaintiffs to recover expenses and attorneys' fees for their dispute with Defendants Marietta and the Plan only. (Doc. 144 at 15). As a result, Plaintiffs seek only half the time they worked on the status reports to exclude the time reasonably spent on portions involving Defendant MedBen. (Doc. 170 at 3 n.1; *see, e.g.*, Doc. 145-1 at 13 (listing half-times or only time spent of Defendants Marietta and the Plan from April 5 until April 8), 14 (same for April 19 through April 22); Doc. 145-2 at 11 (billing half-time amounts)). The Court finds this approach appropriate and accordingly will not reduce Plaintiffs' hours further.

In sum, Plaintiffs' requested number of hours (71.6) is reasonable, their records provide sufficient detail to support their request, and Defendants' have not shown that counsel billed for "excessive, unnecessary[,] and duplicative work." (Doc. 169 at 5).

10

### C. Award for Moving for Fees

Defendants also argue Plaintiffs should not receive the $34,543.12 they incurred in moving for fees. (Doc. 169 at 5). In support, Defendants say the Court's order only allowed Plaintiffs to recover "reasonable expenses and attorneys' fees incurred after the Court first ordered [the parties] to confer (Doc. 120), until May 8, 2024, when the parties reported their disputes were resolved." (*Id.* (quoting Doc. 144 at 15)). In response, Plaintiffs cite several cases from this District where courts have awarded fees and expenses for the preparation of motions for fees. (Doc. 170 at 3–4).

Likewise, the Court finds that such fees and expenses are recoverable here. Notably, the Court sanctioned Defendants under Rule 37(b)(2)(C), which "provides for 'reasonable expenses, including attorney's fees, *caused by the failure* [to comply with the court order].'" *Lotus Indus., LLC v. Archer*, No. 2:17-cv-13482, 2019 WL 4126558, at *3 (E.D. Mich. Aug. 20, 2016) (quoting Fed. R. Civ. P. 37(b)(2)(C)) (emphasis in original). Plaintiffs' motion for fees falls squarely within the Rule's purview. Had Defendants complied with the Court's March 6 order to confer, Plaintiffs' motion for fees would have been unnecessary.

Nor does the Court's previous order limit the availability of such an award. As discussed, courts have great discretion under Rule 37 to grant fees and fashion appropriate sanctions. *Spizizen*, 516 F. App'x at 431. This includes awarding expenses for fee applications. *See McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 488, 493 (6th Cir. 2014) (noting that Rule 37(b)(2)(C) "permit[s] recovery of fees and costs associated with preparing a fee application"). Further, courts within this District have allowed parties to recover such fees even when they were not explicitly provided for by the Court's initial sanctions order. *See, e.g.*, *Asamoah*, 2021 WL 2934711, at *1, 5 (awarding fees incurred for a fee application even though, originally, the court did not order defendants to brief the issue); *compare, e.g.*, *McCarthy v. Ameritech Pub., Inc.*, Case No. 3:10-cv-

11

319, 2012 WL 2601907, at *8 (S.D. Ohio July 5, 2012) (granting a motion for sanctions under Rule 37(c)(2) and ordering the plaintiff to move only for "fees and expenses incurred in making the proof" of the admission), *with McCarthy v Ameritech Pub., Inc.*, No. 3:20-cv-319, 2014 WL 6751648, at *2–4 (S.D. Ohio Dec. 1, 2014) (awarding fees and expenses the plaintiff incurred in preparing her fee application after a remand from the Sixth Circuit on the issue).

Therefore, all that remains is how much Plaintiffs may recover. Having already determined reasonable hourly rates for Plaintiffs, the Court turns to the hours billed. Plaintiffs claim they spent 33.3 hours moving for fees. (*See* Doc. 145-1 at 16–18; Doc. 145-2 at 12–13). For context, Plaintiffs' initial motion for fees consisted of one paragraph, (Doc. 138 at 3), while their reply brief totaled 21 pages with one three-page exhibit (Docs. 143, 143-1). That motion also addressed issues with Defendant MedBen, and in their request for fees, Plaintiffs cut many time entries in half to account for that fact. (*See, e.g.*, Doc. 145-1 at 16–18; Doc. 145-2 at 12–13). Even so, the Court finds the 33.3 hours requested too high. The motion for fees was straightforward, included few exhibits, and did not involve any complex or novel questions of law. And half of Plaintiffs' briefing simply summarized the procedural history of the parties' discovery dispute. (Doc. 143 at 1–11). Therefore, the Court cannot ascertain why over 30 hours were needed to prepare half of a motion for fees. And Plaintiffs provide no further explanation why so much time was necessary. (*See* Doc. 144 (including little argument to accompany its billing records); Doc. 170 at 3–4 (stating only that Defendants failed to show that Plaintiffs could not recover for moving for fees)).

Importantly, in ruling on a motion for fees, the Court's duty is "to do rough justice, not to achieve auditing perfection." *Larsen Graphics, Inc. v. XPO Logistics Freight, Inc.*, No. 1:23-cv-10642, 2024 WL 4579638, at *4 (E.D. Mich. Oct. 25, 2024) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Because of Plaintiffs' lack of explanation for the high number of hours they spent

12

moving for fees, the Court finds a percentage reduction of hours most appropriate. *See, e.g.*, *Swickheimer*, 2021 WL 6033582, at *4 (noting that "the danger of duplication is a waste of resources which is difficult to measure"); *Castro v. Los Camperos, Inc.*, 2:13-cv-1186, 2014 WL 4626292, at *4 (S.D. Ohio Sept. 15, 2014) (finding 40 hours billed for a standard motion to compel excessive and reducing the requested hours by a percentage due to excessive billing); *Lotus Indus., LLC*, 2019 WL 4126558, at *4 (declining to award fees for 20 hours for a motion to compel and reducing the total hours awarded by 50 percent); *Martinez*, 325 F.R.D. at 223 (cutting the requested hours for drafting a reply brief to a motion to compel by a percentage).

After reviewing Plaintiffs' billing records and considering their motion for fees, the Court will reduce the award of fees by 25 percent. After the adjusted hourly rates, Plaintiffs may recover $14,590.88 for moving for fees.

### D. Punitive Sanctions

In a last-ditch effort, Defendants claim that Plaintiffs request a "punitive award," rather than their reasonable expenses and fees. (Doc. 169 at 5–6). In doing so, Defendants largely re-hash why they think the Court's order granting fees was not warranted. (*Id.* (again discussing Defendants' discovery efforts and stating Plaintiffs sought "pointless" ESI)). They further assert that if the Court were to "countenance [Plaintiffs'] punitive behavior, it would create a disincentive for attorneys to make compromises and concessions . . . to resolve discovery disputes." (*Id.* at 6).

This argument is baseless. The Court awarded Plaintiffs fees precisely because Defendants failed to confer or "make compromises" as ordered until the Court threatened sanctions and a hearing. (*Id.*; Doc. 144 at 11–14 (outlining Defendants' conduct during the parties' dispute)). As such, this order will have only one deterrent effect: to discourage parties from ignoring court orders and their obligations to confer on discovery matters. While this award of fees may feel punitive

13

to Defendants, that is partially the point.  A sanction under Rule 37 aims "to punish past discovery failures" and "compensate a party for expenses incurred due to another party's failure to properly allow discovery."  *Thompson v. Vill. of Mt. Pleasant*, No. 2:10-cv-93, 2011 WL 31106, at *2 (S.D. Ohio Jan. 4, 2011) (internal quotation omitted).  In the end, this fee award does both.

IV. **CONCLUSION**

Plaintiffs' request for fees (Doc. 145) is **GRANTED in part** and **DENIED in part**.  The Court reduces the requested fees from $114,065.16 to a total award of $59,629.38.  Defendants Marietta and the Plan are **ORDERED** to pay this amount **within thirty (30) days of the date of this Order**.

IT IS SO ORDERED.


Date: November 14, 2024                                 /s/ Kimberly A. Jolson
                                                        KIMBERLY A. JOLSON
                                                        UNITED STATES MAGISTRATE JUDGE