IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVITA INC. AND DVA RENAL
HEALTHCARE, INC.,

        Plaintiffs,

   v.

MARIETTA MEMORIAL
HOSPITAL EMPLOYEE HEALTH
BENEFIT PLAN, et al.,

        Defendants.

Civil Action 2:18-cv-1739
Chief District Judge Sarah D. Morrison
Magistrate Judge Kimberly A. Jolson

## **OPINION & ORDER**

Plaintiffs' Motion to Compel Further Testimony and Documents from Defendant Medical Benefits Mutual Life Insurance Co.'s ("MedBen") Expert Witness Professor Ryan McDevitt (Doc. 215) and non-party United Food and Commercial Workers Local 1776 and Participating Employers Health and Welfare Fund's ("UCFW") Motion for a Protective Order (Doc. 220) are before the Court. For the following reasons, the Motions are **GRANTED in part** and **DENIED in part**. Plaintiffs may resume Dr. McDevitt's deposition subject to the limitations set forth in this Opinion and Order. Plaintiffs may not obtain the other discovery they seek at this time.

**I.    BACKGROUND**

Plaintiffs DaVita Inc. and its subsidiary DVA Renal Healthcare Inc. are dialysis care providers. (Doc. 95 at 1). Defendant Marietta Memorial Hospital ("Marietta") established and maintains the Marietta Memorial Hospital Employee Health Benefit Plan ("the Plan"). (*Id.* at 2). Defendant MedBen is the Plan's medical benefits manager. (*Id.*). The Plan "provides health and welfare benefits to [Marietta's] eligible employees and their eligible dependents in accordance with the Employee Retirement Income Security Act ("ERISA"). (*Id.*).

Only one claim remains in this nearly seven-year-old case. (Doc. 1 (filed on December 19, 2018)). Plaintiffs allege that "the Plan discriminates against its enrollees suffering from [end-stage renal disease ("ESRD")] by eliminating network coverage for enrollees with ESRD and, by extension . . . exposing enrollees to higher costs," in violation of 29 U.S.C. § 1182. (Doc. 95 at 7 (citing Doc. 62-1 at ¶ 73); *see also id.* at 8 (saying statutes like Section 1182 "bar[] a neutral practice . . . adopted with an invidious *intent* to harm a protected group" (emphasis in original))).

After several appeals, the parties began conducting discovery in earnest in July 2023. (Docs. 96, 97). Disputes emerged right away. On February 9, 2024, Plaintiffs filed a motion to compel discovery responses from Defendants. (Doc. 114). The Court initially stayed briefing on the motion and directed the parties to confer. (Doc. 116). Then, on March 6, 2024, the Court granted the motion in part and ordered the parties to continue conferring. (Doc. 120). After several months, the parties resolved their disputes in May 2024. (Docs. 134, 139).

Even then, discovery did not proceed smoothly, and the parties asked to extend deadlines several times. (*See, e.g.*, Docs. 135, 137, 166, 178). In fact, on two occasions, the Court warned them that no further extensions would be granted. (Doc. 167 at 2; Doc. 179). That wasn't enough to stop the parties' requests. On April 15, 2025, the parties moved to extend the expert report deadlines and the dispositive motion deadline. (Doc. 180). They explained that they needed the extensions to complete expert depositions. (*Id.* at 2). Given its previous warnings, the Court denied the motion without prejudice and ordered the parties to confer on their proposed deadlines. (Doc. 181 at 2).

Eventually, the parties agreed to shorter extensions. (Docs. 182, 183, 184 (status reports and orders on the parties' conferral efforts)). On April 30, the Court set the deadline for rebuttal expert reports for May 9 and the deadline for dispositive motions to June 30, as the parties

2

requested. (Doc. 185). In doing so, the Court highlighted the parties' representation that expert depositions would be done on June 19 after the deposition of Defendant MedBen's testifying expert, economist and dialysis market scholar Dr. Ryan C. McDevitt. (*Id.*; Doc. 184 at 1).

Meanwhile, on May 9, 2025, non-party UCFW filed an antitrust lawsuit against Plaintiff DaVita, Inc. in the District of Colorado. *See United Food and Commercial Workers Loc. 1776, et al., v. DaVita Inc., et al.*, No. 1:25-cv-1478 (D. Colo. May 9, 2025) ("the Colorado litigation"). In that case, UCFW alleges that Plaintiff DaVita, Inc. and another dialysis provider "conspired with one another to corner the United States dialysis industry by allocating territories, fixing prices, and otherwise restraining competition[.]" (Doc. 215-2 at ¶ 2). Dr. McDevitt's scholarship about the dialysis market is cited a dozen times in UCFW's complaint. (*See* Doc. 215-2 (copy of complaint from the UCFW action); Doc. 215 at 2–3).

Likewise, in his expert report for Defendant MedBen in this case, Dr. McDevitt opines on similar antitrust ideas. Specifically, he asserts that Plaintiffs "seek exorbitant payment rates that far exceed the costs of providing [dialysis] services . . . made possible in this case by [their] excessive monopoly power." (Doc. 215-7 at 8; *see also id.* at 14–28 (discussing Plaintiffs' market share in the dialysis industry and dialysis costs)).

These sentiments are not all the cases share. During Dr. McDevitt's deposition for this case on June 19, he divulged that he communicated with UCFW's counsel after the Colorado litigation was filed. (Doc. 218-1 at 106–07 (testifying he had spoken to UCFW's counsel sometime in May 2025 after the Colorado litigation was filed)). When Plaintiffs attempted to question Dr. McDevitt on those communications, he revealed that he had signed a non-disclosure agreement with UCFW's counsel. (*Id.* at 108–09). Later in the deposition, he suggested that UCFW retained him as a non-testifying expert. (*Id.* at 116–118). Counsel for Defendant MedBen

3

then instructed Dr. McDevitt not to answer Plaintiffs' questions about his communications with UCFW. (*See, e.g.*, *id.* at 106–10, 119). As a result, Plaintiffs left the deposition open. (*Id.* at 186).

The next day, Plaintiffs asked Defendant MedBen to continue the deposition for the purposes of probing Dr. McDevitt's potential biases related to his involvement in the Colorado litigation. (Doc. 215 at 4; *see also* Doc. 215-3 at 2–3). Plaintiffs also requested the following documents: (1) communications between Dr. McDevitt and representatives of the plaintiffs in the Colorado litigation; (2) communications between Dr. McDevitt and other third parties, including author Tom Mueller, about the Colorado litigation; and (3) Dr. McDevitt's personal notes or writings about the Colorado litigation. (Doc. 215 at 4; Doc. 215-3 at 2–3). Defendant MedBen refused. (Doc. 215-4).

Consequently, Plaintiffs sought judicial intervention. The Court granted Plaintiffs leave to file a motion to compel (Doc. 210), and granted UCFW and Defendant MedBen leave to respond. (Doc. 217). The Court ordered the parties and UCFW to provide the Court with Dr. McDevitt's deposition testimony and his retention agreement with UCFW. (Doc. 210). Plaintiffs filed their Motion; Defendant MedBen and UCFW responded. (Docs. 215, 219, 220). UCFW also moved for a protective order. (Doc. 220).

The Court has reviewed Dr. McDevitt's retention agreement *in camera*, as well as his deposition testimony. (Doc. 218). Plaintiffs' Motion to Compel and UCFW's Motion for a Protective Order are ripe for review. (Docs. 215, 219, 220, 221).

## II. STANDARD

Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37, for its part, allows for a

4

motion to compel discovery when a party fails to provide proper responses to requests for production of documents or deposition questions. *See* Fed. R. Civ. P. 37(a)(1), (3). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). If the movant meets that burden, "the party resisting production has the burden of establishing that the information either is not relevant" or that the information's relevance "is outweighed by the potential for undue burden[.]" *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 462 (S.D. Ohio Oct. 21, 2015). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-cv-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (citation modified).

### III. DISCUSSION

Much of this dispute comes down to Dr. McDevitt's role in the Colorado litigation. Plaintiffs argue that his deposition testimony suggests he has not been retained as an expert at all. (Doc. 215 at 5–7). As such, they say his communications with UCFW and others, as well as his notes and writings on that case, are fair game. (*Id.*). Alternatively, if he was retained, Plaintiffs assert they are still entitled to the discovery they seek to probe his potential biases. (*Id.* at 8–10; Doc. 221 at 3–5).

After reviewing Dr. McDevitt's deposition and his retention agreement *in camera* (Docs. 210 at 2; Doc. 218), the Court finds that UCFW retained Dr. McDevitt as a non-testifying expert in the Colorado litigation. Considering that fact, the relevant discovery principles, and this litigation's late stage, the Court grants Plaintiffs some of the discovery they seek.

### A. Relevance

To begin, Defendant MedBen and UCFW argue that information concerning Dr. McDevitt's involvement in the Colorado litigation is not relevant, since Dr. McDevitt did not rely upon any information from that case in forming his opinions in this action. (Doc. 219 at 9; Doc. 220 at 7–8). The Court disagrees and finds, at least initially, that Plaintiffs seek relevant information.

The scope of discovery is broad. It "is not limited to the precise issues set out in the pleadings or to the merits of the case." *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 406 (N.D. Ohio 2011). Rather, parties may obtain discovery that could show witnesses' biases, including experts. *See, e.g.*, *Behler v. Hanlon*, 199 F.R.D. 553, 561 (D. Md. 2001); *Burger v. Allstate Ins. Co.*, No. 07-11870, 2009 WL 15872396, at *2 (E.D. Mich. June 8, 2009); *Est. of Jackson v. Billingslea*, No. 18-10400, 2019 WL 2743750, at *1–2 (E.D. Mich. July 1, 2019); *Large on behalf of Large v. Blazer*, No. 3:20-cv-1012, 2022 WL 99986, at *3 (M.D. Tenn. Jan. 10, 2022).

Here, Plaintiffs say that Dr. McDevitt produced a report in this case on March 28, 2025. (Doc. 215-7; *see also* Doc. 215 at 1 (stating Dr. McDevitt has submitted three expert reports for Defendant MedBen)). That report, in part, opined on whether Plaintiffs "seek exorbitant payment rates" for dialysis services because of their "excessive monopoly power" in the dialysis market. (Doc. 215-7 at 8; *see also id.* at 16–17, 22–28 (discussing Plaintiffs' and another dialysis provider's business practices and share of the dialysis market)). Less than two months later, on May 9, UCFW filed its lawsuit, which contains similar antitrust allegations against Plaintiffs and cites Dr. McDevitt's scholarship. (*See* Doc. 215-2). UCFW then retained Dr. McDevitt as a non-testifying expert in its case. (Doc. 220-1 at 2–3). Plaintiffs seek discovery about Dr. McDevitt's involvement with UCFW's case to probe his potential biases. (Doc. 215 at 6).

6

Courts have found such information relevant under Rule 26(b)(1)'s expansive scope. *See Great Lakes Anesthesia, PLLC v. State Farm Mut. Auto. Ins. Co.*, Nos. 11-10658, 11-11003, 11-11855, 2011 WL 4507417, at *4–6 (E.D. Mich. Sept. 29, 2011) (allowing discovery of financial information to probe medical expert's bias in favor of the defendant); *Burger*, 2009 WL 1587396, at *2 (allowing discovery into the volume of work experts performed for defendants in other personal injury cases); *Est. of Jackson*, 2019 WL 2743750, at *2 ("[I]nformation that relates to the potential bias of an expert witness is relevant to the witness's credibility, which could directly affect impeachability." (citation modified)); *Polskie Linie Lotnicze LOT S.A. v. Boeing Co.*, No. 21-1449, 2025 WL 1645172, at *2 (W.D. Wash. May 23, 2025) (allowing deposition questioning into an expert's potential financial interest in related litigation against the defendant).

Still, relevance is not the only factor that matters. *See, e.g.*, *Large on behalf of Large*, 2022 WL 99986, at *3 ("[T]he simple fact that requested information [on bias] is discoverable . . . does not mean that discovery must be had.") (quoting *Langbord v. U.S. Dep't of Treasury*, No. 06-cv-05315, 2008 WL 4748174, at *5 (E.D. Penn. Oct. 22, 2008)). The Court now turns to Defendant MedBen's and UCFW's arguments concerning Federal Rule of Civil Procedure 26(b)(4)(D) and the scope of discovery.

### B. Rule 26(b)(4)(D) Issues

What discovery Plaintiffs can obtain depends, in part, on Dr. McDevitt's precise involvement with the Colorado litigation. The Court finds that Dr. McDevitt is a non-testifying expert in that case. For that reason, much of the information Plaintiffs seek is not discoverable.

#### 1. Limits on Discovery Related to Non-Testifying Experts

Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure limits a party's ability to obtain discovery from another party's non-testifying expert. Courts disagree on whether this protection

7

against discovery is an extension of the attorney work-product doctrine or a separate privilege entirely.  *Compare Genesco, Inc. v. Visa USA, Inc.*, 302 F.R.D. 168, 189 (M.D. Tenn. 2024) (saying that the "non-testifying expert privilege is distinct from the work-product doctrine and the attorney-client privilege") (citing *In re PolyMedica Corp. Sec. Litig.*, 235 F.R.D. 28, 30 (D. Mass. 2006)) *with In re OGGUSA, Inc.*, No. 20-50133, 2021 WL 2188927, at *4 (E.D. Ky. May 28, 2021) (describing Rule 26(b)(4)(D) as "an extension of the work product doctrine") (collecting cases); *see also Precision of New Hampton, Inc. v. Tri Component Prods. Corp.*, No. C12-2020, 2013 WL 2444047, at *4 (N.D. Iowa June 5, 2013) (discussing that "[c]ourts disagree over the relationship" between Rule 26(b)(4)(D) and the work-product doctrine).  Regardless, the rule is clear that "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D); *see also Trepel v. Roadway Exp., Inc.*, 40 F. App'x 104, 110 (6th Cir. 2002) ("Certainly, expert witnesses retained in anticipation of litigation, but not expected to testify, are protected from discovery under [Rule 26].") (citing *USM Corp. v. Am. Aerosols, Inc.*, 631 F.2d 420, 424 (6th Cir. 1980)).

  This discovery limit serves two interests.  First, "[t]he rule aims to prevent a party from benefitting from the effort expended and costs incurred by the opposing party while preparing for litigation." *Precision of New Hampton, Inc.*, 2013 WL 2444047, at *3; *see also Genesco, Inc.*, 302 F.R.D. at 189 (stating the rule prevents "the unfairness of counsel benefiting from an adversary's retention and financing of an expert").  Second, the rule allows counsel to "obtain the expert advice they need . . . without fear that every consultation with an expert may yield grist for

8

the adversary's mill." *Precision of New Hampton, Inc.*, 2013 WL 2444047, at *3 (quotation omitted).

Because of these interests, discovery from non-testifying experts is allowed in only two circumstances: medical examinations under Rule 35(b) or upon a showing of exceptional circumstances. *See* Fed. R. Civ. P. 26(b)(4)(D); *Sara Lee Corp. v. Kraft Foods, Inc.*, 273 F.R.D. 416, 419 (N.D. Ill. Apr. 1, 2011); *Dahl v. Turner*, No. 2:22-cv-72, 2024 WL 4005957, at *8 (E.D. Tenn. Mar. 12, 2024). The rule, however, is construed narrowly, and the "party relying on [it] bears the burden of showing that it applies." *Dahl*, 2024 WL 4005957, at *8 (citing *In re OGGUSA, Inc.*, 2021 WL 2188927, at *4). For that reason, if there is "any ambiguity regarding the role played by a party's consultant in reviewing or creating documents . . . it should be resolved in favor of the party seeking discovery." *Id.* (citation modified).

2. *Communications with UCFW's Counsel and Retention Agreement*

As it relates to UCFW and its counsel, Plaintiffs want "[a]ny and all communications between Professor McDevitt and/or Charles River Associates and any representatives of the plaintiffs or prospective plaintiffs in the [Colorado litigation]." (Doc. 215-3 at 2–3). Because it retained Dr. McDevitt as a non-testifying expert, UCFW objects under Rule 26(b)(4)(D). (Doc. 220 at 6–8). For their part, Plaintiffs say the rule does not apply. They assert that Dr. McDevitt's deposition testimony suggests he was not retained by UCFW as an expert at all. (Doc. 215 at 6–7; Doc. 221 at 3–4). If he has, Plaintiffs say the details of his retention are ambiguous enough to justify the requested discovery. (Doc. 215 at 5–6; Doc. 221 at 3).

The record is clearer than Plaintiffs suggest. In arguing that Dr. McDevitt is not a non-testifying expert in UCFW's case, Plaintiffs highlight supposedly inconsistent statements from his June 19 deposition. (Doc. 221 at 1–3). The Court reads his testimony differently. Dr. McDevitt

9

is not a lawyer. Consequently, he did not use legal terminology when describing his role in the Colorado litigation. Taken as a whole, his statements confirm his status as a non-testifying expert. For example, when Plaintiffs asked whether he has "been retained as an expert," Dr. McDevitt said he had not been "formally retained." (Doc. 218-1 at 108). But he expressed uncertainty about his "obligations" to UCFW's counsel and whether any attorney-client privilege shielded his conversations with them. (*Id.*). After more questioning, he said that he signed a non-disclosure agreement providing that if he and UCFW's counsel "ha[d] conversations about dialysis, [UCFW's counsel] will compensate [him] for [his] time." (*Id.* at 118). He further explained that he was not retained "as an expert witness" but "as someone to give them background information." (*Id.*). Clearly, these statements describe a non-testifying expert's role. *See, e.g.*, Fed. R. Civ. P. 26(b)(4)(D) (limiting discovery of facts known and opinions held by experts "specially employed by another party . . . to prepare for trial and who is not expected to be called as a witness at trial"). Indeed, during the deposition, both sides' counsel seemingly understood that Dr. McDevitt described "a consulting engagement." (Doc. 218-1 at 118–19). Plus, the Court has reviewed the retention agreement between Dr. McDevitt and UCFW *in camera*. It confirms his status as UCFW's non-testifying expert.

      Still more, the timeline is also not as murky as Plaintiffs say. (Doc. 221 at 3–4 (highlighting comments from Defendant MedBen, who has not seen the retention agreement)). UCFW filed its case on May 9, 2025, and, according to the retention agreement provided to the Court *in camera*, UCFW retained Dr. McDevitt on June 5. *United Food and Commercial Workers Loc. 1776, et al.*, No. 1:25-cv-1478 (D. Colo. May 9, 2025) (Doc. 1). In an affidavit provided to the Court, UCFW's counsel avers that all their communications with Dr. McDevitt occurred subject to the retention agreement. (Doc. 220-1 at 2–3).

Dr. McDevitt's deposition testimony confirms this account. Importantly, during his deposition, Dr. McDevitt did not have access to the agreement and testified from memory. (Doc. 218-1 at 109–10 (saying the agreement was not in front of him)). Unsurprisingly, he could not provide exact dates for his conversation with UCFW. (*See id.* at 115–17 (approximating the timeline of the conversation based on other events that occurred after the Colorado litigation was filed)). Even so, Dr. McDevitt discussed having one conversation with UCFW's counsel "about a month" before his deposition. (Doc. 218-1 at 107; *see also id.* at 117 (saying he spoke to counsel "at some point after" the case was filed)). He also testified that the retention agreement was in place before that conversation. (*Id.* at 110; *see also id.* at 114 (saying he had no part in the filing of the Colorado litigation)). The Court finds his estimation of the timeline reasonable, since his deposition occurred on June 19 and the retention agreement was signed on June 5. In any event, his approximations do not suggest he lied under oath, as Plaintiffs assert. (Doc. 215 at 7; Doc. 221 at 2).

Further, the alleged subject matter of the conversation falls within Rule 26(b)(4)(D)'s purview. Both Dr. McDevitt and UCFW represent that they discussed his opinions on the Colorado litigation and the dialysis market. (Doc. 220-1 at 2–3; Doc. 218-1 at 107). Rule 26(b)(4)(D) plainly protects such opinions from discovery. Fed. R. Civ. P. 26(b)(4)(D) (protecting "facts known or opinions held" by non-testifying experts); *see, e.g.*, *Genesco, Inc.*, 302 F.R.D. at 182, 189–90 (sustaining objections to requests for correspondence between a party and a non-testifying expert under Rule 26(b)(4)(D)); *Bartram, LLC v. Landmark Am. Ins. Co.*, No. 1:10-cv-00028, 2011 WL 284448, at *3 (N.D. Fla. Jan. 24, 2011) (finding post-retention communications between a party and its non-testifying expert that occurred are protected by Rule 26(b)(4)(D)); *Sara Lee Corp.*, 273 F.R.D. at 420 (finding that communications related solely to an expert's "role

11

as a consultant," even though he served as a testifying expert for other parts of the case, were protected by Rule 26(b)(4)(D)); *Giesecke & Devrient GmbH v. United States*, 174 Fed. Cl. 1, 20–21 (Fed. Cl. 2024) (finding Rule 26(b)(4)(D) protected communications between counsel and a non-testifying expert during the retention period).

Given Rule 26(b)(4)(D) applicability, Plaintiffs must show exceptional circumstances to obtain Dr. McDevitt's communications with UCFW and its counsel. Fed. R. Civ. P. 26(b)(4)(D); *Genesco, Inc.*, 302 F.R.D. at 189; *In re OGUSA, Inc.*, 2021 WL 2188927, at *3–4. They have not made that showing. Plaintiffs contend the communications are necessary to probe Dr. McDevitt's potential biases against them. (Doc. 215 at 6). The Court finds that Plaintiffs do not need protected communications to examine his bias. Plaintiffs already know that UCFW retained him as a non-testifying expert and will compensate him for that work. (Doc. 218-1 at 118; Doc. 220-1 at 2–3). They fail to explain what other information can be gleaned only from his conversations with UCFW. (*See* Doc. 215 at 5–7; Doc. 221); Fed. R. Civ. P. 26(b)(4)(D)(ii) (requiring a party to show "it is impracticable . . . to obtain facts or opinions on the same subject by other means"). None of their cited cases say otherwise. *Cf. Polskie Linie Lotnicze LOT S.A.*, 2025 WL 1645172, at *2 (allowing 30 additional minutes of deposition to inquire about financial interests in related litigation, not communications); *Pridemore-Turner v. Univ. Health Sys., Inc.*, No. 3:20-cv-318, 2021 WL 5831483, at *4 (E.D. Tenn. Dec. 8, 2021) (addressing only whether a testifying expert's consulting history was relevant in the context of a motion *in limine*); *Silgan Containers v. Nat'l Union Fire Ins.*, No. 09-cv-5971, 2011 WL 1058861, at *6 (N.D. Cal. Mar. 23, 2011) (allowing limited disclosure of some past retention agreements); *Bartram, LLC*, 2011 WL 284448, at *3 (compelling communications only for the time period before the non-testifying expert was retained and finding post-retention communications were protected).

Still, Plaintiffs try to avoid Rule 26(b)(4)(D)'s application in a few ways. First, they argue Dr. McDevitt waived any protection the rule provides. (Doc. 221 at 4–5). In their view, because Dr. McDevitt disclosed the existence of his conversation with UCFW's counsel, "the proverbial genie is out of the bottle," and those communications are no longer protected. (*Id.* at 3–4). Courts within the Sixth Circuit disagree and have found that Rule 26(b)(4)(D)'s protections cannot be waived. *Genesco, Inc.*, 302 F.R.D. at 195; *Scott v. Abernathy Motorcycle Sales, Inc.*, No. 1:18-cv-1077, 2019 WL 12056315, at *2 (W.D. Tenn. Jan. 18, 2019). Plus, all Dr. McDevitt said is that he spoke to UCFW's counsel about his opinions on its case and the dialysis market. (Doc. 218-1 at 107). Even if waiver doctrine applies, courts have found far more extensive disclosures insufficient to justify discovery of a non-testifying expert. *See Sara Lee Corp.*, 273 F.R.D. at 421 (rejecting a similar argument) ("Merely admitting that communications occurred does not qualify as 'disclosing' the underlying communications."); *Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. P'ship*, 154 F.R.D. 202, 210–211 (N.D. Ind. 1993) (finding disclosure of a one-page summary of a consulting expert's findings did not constitute a waiver); *Precision of New Hampton, Inc.*, 2013 WL 2444047, at *6 (concluding no waiver occurred where an insurer and the non-testifying expert, rather than the protected party, made the disclosures).

Next, Plaintiffs contend that because UCFW has not compensated Dr. McDevitt yet, his conversation with UCFW must not be protected under Rule 26(b)(4)(D). (Doc. 221 at 2). This argument also lacks merit. As noted, Dr. McDevitt spoke to UCFW's counsel sometime between June 5, the day the retention agreement was signed, and June 19, the day of his deposition. (Doc. 218-1 at 110; Doc. 220-1 at 2–3). The fact that UCFW did not make a payment within a two-week period does not mean the retention agreement does not apply to their communications.

Finally, although not listed in their formal discovery requests (Doc. 215 at 4), Plaintiffs argue they are entitled to a copy of Dr. McDevitt's retention agreement because he "either refused to answer questions he had no right to refuse to answer if he isn't a retained expert . . . or he testified falsely that he was not a retained expert when under oath." (*Id.* at 7). The Court disagrees. As discussed, even though he did not use legal jargon, Dr. McDevitt properly described his role as a non-testifying expert. His estimations of when he was retained and when he spoke to UCFW's counsel are also reasonable, given that he testified solely from memory. At base, Dr. McDevitt did not "testif[y] falsely," and Plaintiffs have not shown exceptional circumstances warrant discovery of his retention agreement. (*Id.* at 7).

In sum, UCFW has retained Dr. McDevitt as a non-testifying expert in the Colorado litigation, and its communications with him are thus protected by Rule 26(b)(4)(D). As a result, Plaintiffs' Motion to Compel those communications is **DENIED**, and UCFW's Motion for a Protective Order is **GRANTED**.

### C. Additional Written Discovery Requests

Plaintiffs' other written discovery requests concern Dr. McDevitt's personal writings about the Colorado litigation, as well as his communications with Tom Mueller and other third parties about the case. (Doc. 215 at 4). At this stage of the case, the Court finds Plaintiffs' bases for these requests too speculative to reopen written discovery.

#### 1. Personal Notes and Writings

Plaintiffs ask for Dr. "McDevitt's personal notes or writings [about the Colorado litigation]." (*Id.*). This request is odd. If Dr. McDevitt created any documents in connection with his consultative work for UCFW, those documents are protected under Rule 26(b)(4)(D). *Genesco, Inc.*, 302 F.R.D. at 182, 190 (denying a request for documents from a non-testifying

14

expert); *Powerweb Energy, Inc.*, 2014 WL 655206, at *8 (same); *Sara Lee Corp.*, 273 F.R.D. at 420 (same); *Hartford Fire Ins. Co.*, 154 F.R.D. at 208–11 (denying a request for a consulting expert's report). Beyond such documents, it is not clear that other writings or notes exist. Importantly, Plaintiffs did not ask Dr. McDevitt about any during his deposition, and Dr. McDevitt testified about none. (Doc. 218-1 at 104–21 (questioning on the Colorado litigation)). Plaintiffs, Defendant MedBen, and UCFW also mention no personal writings or notes in the briefing. (*See* Docs. 215, 219, 220, 221). Plaintiffs only speculate that such writings, if they exist, would contain evidence of Dr. McDevitt's potential biases against them.

At this stage, long after the fact discovery and expert report deadlines expired, such a hunch is insufficient to allow written discovery. (Doc. 167 (setting the close of fact discovery to February 7, 2025); Doc. 184 at 2 (representing that expert discovery would be finished on June 19)). To obtain discovery, a party must make "a threshold showing that the requested information is reasonably calculated to lead to the discovery of admissible evidence." *Bustetter v. Standard Ins. Co.*, No. 18-1-DLB-EBA, 2018 WL 11375143, at *6 (E.D. Ky. Oct. 23, 2018) (quoting *Tomkins v. Detroit Metro. Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012)). "[N]aked speculation," as Plaintiffs present here, "is not a proper basis for a discovery request." *Id.* (quotation omitted). On this record, the Court will not send Dr. McDevitt or Defendant MedBen on a snipe hunt for notes or writings that may not exist or be discoverable under Rule 26(b)(4)(D). Plaintiffs' request is therefore **DENIED without prejudice**. As discussed in more detail below, should Plaintiffs obtain credible information that discoverable notes and writings relevant to bias exist, the Court may revisit this decision.

15

### 2. *Communications with Tom Mueller and Other Third Parties*

Plaintiffs' final request for production seeks any communications between Dr. McDevitt and Tom Mueller or other third parties about the Colorado litigation. (Doc. 215 at 4).

As background, Tom Mueller is a journalist who writes about the dialysis market and Dr. McDevitt's friend. (Doc. 219 at 3; Doc. 218-1 at 85–86). His work, in addition to Dr. McDevitt's, is cited in UCFW's complaint. (Doc. 219 at 3). During his June 19 deposition, Dr. McDevitt testified that Mr. Mueller sent him the UCFW complaint shortly after it was filed. (Doc. 218-1 at 105). He explained that Mr. Mueller did so because the two "routinely trad[e] information about dialysis, and [Mueller] thought [the Colorado litigation] was something that would be relevant and interesting for [Dr. McDevitt]." (*Id.*). According to Dr. McDevitt, he responded to Mr. Mueller's email and thanked him, but the two had no other communications about the Colorado litigation. (*Id.* at 116). Plaintiffs asked no further questions on Dr. McDevitt's communications with third parties during his deposition. Now, they seek to compel any communications he had with Tom Mueller and others about the Colorado litigation. (Doc. 215 at 4).

None of the parties contend that the communications are protected. Instead, Defendant MedBen objects based upon proportionality. Because Dr. McDevitt did not refuse to answer Plaintiffs' questions about his communications with Mr. Mueller or other third parties, Defendant MedBen says Plaintiffs already had an opportunity to address this topic and neglected to do so. (Doc. 219 at 3 n.1, 9–10). Simply put, they assert Plaintiffs do not deserve another bite at the apple through written discovery requests.

For their part, Plaintiffs offer no justification for their failure to ask Dr. McDevitt about his communications with third parties besides Mr. Mueller. (*See* Doc. 221). Defendant MedBen is correct that Dr. McDevitt did not refuse to answer any questions about his communications with

16

Mr. Mueller. (*See* Doc. 218-1 at 85–89, 105–20, 185–86). Even so, Plaintiffs seem to suggest that his testimony about those communications was not truthful. Although Dr. McDevitt said he and Tom Mueller did not discuss the Colorado litigation after their initial email exchange, Plaintiffs assert the two appeared in a CBS News segment on the dialysis market and UCFW's case on June 22—three days after Dr. McDevitt's deposition. (Doc. 221 at 2). Notably, the two do not appear together in the segment. They are interviewed separately. *See* Kidney Dialysis Industry Accused of Maximizing Profits Over Patients, CBS News, https://www.cbsnews.com/video/kidney-dialysis-industry-accused-of-maximizing-profits-over-patients/?linkId=833532440 (June 22, 2025) (last accessed July 25, 2025). In other words, nothing in the segment suggests that Dr. McDevitt and Mr. Mueller discussed the Colorado litigation between his deposition on June 19 and the CBS News segment that aired on June 22.

Given this limited record, the Court finds Plaintiffs have not shown that additional written discovery is warranted. Plaintiffs wholly failed to ask Dr. McDevitt about his communications with third parties other than Mr. Mueller. Dr. McDevitt did not refuse to answer such questions, nor did Defendant MedBen's counsel instruct him not to answer. Plaintiffs provide no evidence that such communications exist or would be probative of any biases Dr. McDevitt may have. Therefore, the Court cannot find that the likely benefit of these communications outweighs the burden or cost of production for Defendant MedBen and Dr. McDevitt. *See* Fed. R. Civ. P. 26(b)(1).

Further, the discovery deadlines in this case have passed. Although the Court appreciates that Plaintiffs learned about the Mueller communication recently, the parties chose to schedule expert depositions after discovery had otherwise closed. (*See, e.g.*, Doc. 166 at 3 (moving to extend deadlines for fact discovery and expert reports, but not expert discovery, and including only

17

a month between expert report deadlines and dispositive motions); Doc. 180 at 1–2 (noting the parties produced primary expert reports on March 28, 2025); Doc. 184 at 1–2 (discussing that expert depositions were scheduled in late May and June 2025)). Additionally, the parties already filed summary judgment motions. (Docs. 211, 212, 222). As previously warned, the Court will not reopen written discovery or delay resolution of this action due to the parties' litigation choices. (Doc. 185 at 2; Doc. 210 at 2).

In sum, the Court will allow limited inquiry into this area during the resumed deposition, as explained below, but **DENIES** Plaintiff's Motion to compel written discovery responses **without prejudice**. If Plaintiffs acquire information suggesting other third-party communications relevant to bias exist, the Court may allow additional discovery at that time.

   **D.**  **Request to Resume Deposition**

Finally, the Court turns to Plaintiffs' request to resume Dr. McDevitt's deposition. Notably, Plaintiffs seemingly left the deposition open to address his communications with UCFW's counsel. (*See* Doc. 218-1 at 186 ("We're going . . . to keep the deposition open, especially related to the questions you refused to answer and were instructed not to answer by Counsel.")). It now appears that Plaintiffs want to ask him more. Based upon the briefing, Plaintiffs seek additional information about his personal notes and writings, his communications with Tom Mueller and other third parties, and perhaps the CBS News segment. (*See* Docs. 215, 221).

As noted, Dr. McDevitt did not refuse to answer Plaintiffs' questions about his communications with third parties, and Plaintiffs already deposed him for five-and-a-half hours. (Doc. 215 at 4). The Court will not grant Plaintiffs additional time beyond what the Federal Rules of Civil Procedure allow. *See* Fed. R. Civ. P. 30(d)(1) (limiting depositions to "1 day of 7 hours")).

18

The Court also provides the parties with guidance and limitations to avoid additional disputes or duplicative questioning.

As discussed above, Plaintiffs may not question Dr. McDevitt about any information protected by Rule 26(b)(4)(D). This includes his opinions on the Colorado litigation, the facts he knows about the case, the substance of his consulting work, his notes or writings related to that work, or his communications with UCFW and its representatives. Plaintiffs may inquire, however, into his financial interests in that litigation and his motivations for agreeing to serve as an expert in this case. They may also ask about his CBS News appearance, since that appearance seemingly occurred outside the scope of his consultative work.

Additionally, Plaintiffs may question Dr. McDevitt about communications he had with Mr. Mueller or other third parties about UCFW's case. Plaintiffs must avoid duplicative questioning as much as possible and be mindful of their limited, remaining deposition time.

Finally, the Court **ORDERS** that the resumed deposition shall take place **within twenty-one (21) days of the date of this Order**. To reduce costs, and given the parties' difficulties scheduling their initial expert depositions (Doc. 182 at 2–3), the parties should consider conducting the deposition remotely via video or telephone conference.

If Plaintiffs obtain credible, non-speculative information during this deposition that indicates relevant documents or third-party communications exist, they are **ORDERED** to first confer with Defendant MedBen on any requests for production. If the parties cannot resolve related disputes, they may file position statements **no later than fourteen (14) days after Dr. McDevitt's deposition**. Such position statements shall not exceed five pages. The Court reminds the parties that they must exhaust all extrajudicial means of resolving their disputes before seeking

the Court's intervention. S.D. Ohio Civ. R. 37.1. Unreasonable positions will result in the Court shifting fees.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel (Doc. 215) and UCFW's Motion for a Protective Order (Doc. 220) are **GRANTED in part** and **DENIED in part**. The Court **DENIES** Plaintiffs' requests to question Dr. McDevitt about his communications with UCFW's counsel in the Colorado litigation. To the extent Plaintiffs seek his personal notes or writings associated with his consultative work in that case, the Court also **DENIES** that request. Finally, the Court **DENIES without prejudice** Plaintiffs' other requests for documents related to third-party communications and Dr. McDevitt's writings.

The Court **GRANTS** Plaintiffs' request to resume Dr. McDevitt's deposition. The parties are **ORDERED** to hold the deposition **within twenty-one (21) days of the date of this Order**. The parties shall consider conducting the deposition remotely.

If Plaintiffs obtain credible, non-speculative information during this deposition that indicates relevant documents or third-party communications exist, they are **ORDERED** to confer with Defendant MedBen on any requests for production. If the parties cannot resolve any related disputes, they may file position statements **no later than fourteen (14) days from the date of Dr. McDevitt's deposition**. Such position statements shall not exceed five pages.

IT IS SO ORDERED.


Date: July 25, 2025 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE